[No. 9768.  Department One. — September 24, 1885.]

JAMES QUINN, APPELLANT, v. CARL WINDMILLER, RESPONDENT.

EVIDENCE—KNOWLEDGE OF THE COURT—UNITED STATES SURVEY—AREA OF QUARTER SECTION. — The court will take judicial notice of the intended area of a quarter section under the system adopted by the United States for surveying and marking out its public lands; and whenever a claim is made that a quarter section contains a greater area, affirmative proof must be produced that the lines were so run upon the ground as to include such greater area.

BOUNDARIES—DIVISION FENCE—PRESCRIPTION. — Where the owners of adjacent tracts of land, being ignorant of the exact position of the boundary line, erect a division fence under an agreement that when the true line is ascertained the fence shall be placed thereon, neither can, unless the line of the fence has been settled and agreed upon as the correct boundary line, acquire any title by prescription or estoppel to land of the other included in his tract by a mistake in the position of the division fence.

APPEAL from a judgment of the Superior Court of the county of Sacramento, and from an order refusing a new trial.

The facts are stated in the opinion.

*Freeman & Bates,* for Appellant.

The plaintiff showed title by prescription. (*Bauer* v. *Gottmanhausen,* 65 Ill. 499; *Faught* v. *Holway,* 50 Me. 30; *Smith* v. *Hamilton,* 20 Mich. 434; *Yates* v. *Shaw,* 24 Ill. 368; *McGee* v. *Stone,* 9 Cal. 600.)

*A. P. Catlin,* for Respondent.

The possession of the plaintiff was not adverse. (*Farish* v. *Coon,* 40 Cal. 33; *Irvine* v. *Adler,* 44 Cal. 559; *Thompson* v. *Pioche,* 44 Cal. 509; *Thompson* v. *Felton,* 54 Cal. 547.)

BELCHER, C. C. — The plaintiff and defendant own lands which adjoin on two sides, a mile on one side and a half mile on the other. In 1872 or 1873 the plaintiff's grantor and the defendant constructed a fence to divide their lands. This fence remained where it was placed till May, 1883, when the defendant, claiming that it was on his land and not on the true lines between them, removed a portion and asked the plaintiff to remove the balance of it. This action was then commenced by the plaintiff, to quiet his title up to the lines of the fence as it stood before any of it was removed. The case was tried and judgment rendered in favor of the defendant, from which and from an order denying a new trial the appeal is taken.

In his complaint the plaintiff describes the land to which he claims title as commencing at the center of a certain section seven, and running thence north forty-three chains to a fence, as it stood in the fall of 1882; thence west along the fence eighty-three chains to a fence; thence south along the fence sixty-three chains; thence east eighty-three chains, and thence north twenty chains, to the place of beginning.

In making their proofs both parties showed title from the United States, and their lands were described by legal subdivisions. The plaintiff did not attempt to show that the fence to which he claimed on the north and west was built upon the lines of the quarter sections as surveyed, but he insists that the court cannot know judicially that it was not so built, and that at any rate the plaintiff has title by prescription to the surplus, and that the defendant must be held estopped from denying that the fence was built upon the true lines.

We think the court does know judicially that under the system adopted by the United States for surveying and marking out its public lands, a quarter section is intended to be just forty chains square, and that whenever a claim is made that a quarter section contains a greater area, affirmative proof must be produced that the lines were so run upon the ground as to include that greater area. Here, in the absence of such proof, the court was justified in saying that the north line of section seven was only forty, and not forty-three chains north of its center.

Upon the questions of prescription and estoppel, it is claimed for the appellant that the fences were built by the owners of the

lands in 1872 or 1873, upon agreed lines, and that the plaintiff's grantor occupied to those lines for about ten years, claiming title, and he thereby acquired title by prescription; that the defendant acquiesced in the lines as fenced, for the same length of time, and thereby became estopped from denying that they were the true lines.

Speaking of the building of the fences, defendant testified: "Neither Tapper," plaintiff's grantor, "nor I knew where the lines were; we hunted around to find the lines; Tapper claimed that the line was where the fences were placed; we agreed that when we ascertained where the lines were we would put the fences upon the lines; the Pearson line varied six or eight feet from the Prentiss line; it was further south; I always claimed to the true line; the fences were not straight; there was a 'jog' of eight feet in one place where the part that Tapper built joined with the part that I built; the fences were not parallel with the true line; they did not run east and west, nor north and south." The statement further shows that "it appeared that the fences on the north side of plaintiff's land diverged all the way from one foot to twenty-two feet from an east and west line; and the fences on the west side diverged from one to eighteen feet from a north and south line."

Tapper was called as a witness for the plaintiff, and denied that anything was said between him and the defendant about changing the lines of the fences if they should afterward ascertain that they were not correct; but the court below evidently believed the defendant, as it found in his favor on every point.

Assuming the defendant's testimony to be true, it is clear, we think, that Tapper, if he had commenced this action, could not have maintained it, either upon the ground of prescription or of estoppel, and we fail to see how the plaintiff can do what Tapper could not. (*Irvine* v. *Adler*, 44 Cal. 559.)

When the plaintiff purchased, the deed which he received described the land by government quarter sections, and this remained so until the day before this action was commenced, when he took a new deed conveying to him all the land which was in his grantor's possession prior to the date of the first deed. But when this deed was received a part of the fence had been removed, and the plaintiff knew of defendant's claim.

Counsel for appellant cite in support of their views, *Sneed* v. *Osborne*, 25 Cal. 626; *Columbet* v. *Pacheco*, 48 Cal. 397; *Moyle* v. *Connolly*, 50 Cal. 295; *Biggins* v. *Champlin*, 59 Cal. 113; *Cooper* v. *Vierra*, 59 Cal. 282; and *Johnson* v. *Brown*, 63 Cal. 391; but none of these cases are in point here.    They hold, as was said in *Johnson* v. *Brown*, that " where owners of adjacent parcels of land have occupied adversely to each other for more than five years their respective tracts by a division line, which each has recognized and acquiesced in as the true line during all of that time, either is estopped from afterward questioning it as the true line."    But here, as the court finds, " the line of said fences was never settled and agreed upon by defendant and plaintiff or his grantors as the true and correct boundary line of their respective tracts of land."

It is not necessary to notice the other points.

We think the judgment and order should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion the judgment and order are affirmed.