[No. 19370.   In Bank.—February 23, 1895.]

SAN FRANCISCO AND FRESNO LAND COMPANY, APPELLANT, v. J. BANBURY, AS TREASURER OF LOS ANGELES COUNTY, ET AL., RESPONDENTS.

TAX SALE—REDEMPTION OF LAND FROM STATE—CHARGE FOR NOTICE OF REDEMPTION.—Where land has been sold to the state for taxes, the delinquent taxpayer, in order to effect a redemption of the land, is not required to pay the sum of three dollars for each lot redeemed, for giving notice of intention of the state to apply for a deed under section 3785 of the Political Code, as part of the costs and expenses which have accrued by reason of the delinquency and sale.

ID.—POLICY OF STATE—BURDEN OF TAXATION.—It is not the policy of the state to increase the burdens of taxation beyond the necessary cost of collection, or to impose any greater burdens in a redemption from a de-

linquent tax sale than is necessary to secure the payment of the original tax.

ID.—POWER OF OFFICERS OF STATE—LEGISLATIVE OMISSION.—No officer or agent of the state is impowered by the Political Code to give the requisite notice to a delinquent taxpayer that the state will apply for a deed, and neither the attorney general nor the controller is entitled to demand or receive any fee for the giving of such notice, or to authorize any agent to charge and receive a fee for the giving of such notice, the legislature having omitted to provide therefor.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*Holdridge O. Collins,* and *Allen, McAllister & Frohman,* for Appellant.

*Spencer G. Millard,* and *Attorney General W. H. H. Hart,* for Respondents.

The COURT.—When this case was decided in Department the following opinion was rendered by Mr. Justice Harrison: "In June, 1892, the plaintiff, as the owner and successor in interest of sixty-seven lots of land in McPherson's addition to the town of McPherson, formerly in the county of Los Angeles, but now in the county of Orange, sought to redeem them from a sale for delinquent taxes made to the state of California March 12, 1889, and for that purpose tendered to the defendant, Banbury, as treasurer of the county of Los Angeles, the sum of two hundred and twenty-five dollars and sixty cents. It is conceded that this amount of money was sufficient to effect the redemption, unless the sum of three dollars for each lot, amounting to two hundred and one dollars, for giving the notice of an intention to apply for a deed and the affidavit therefor, fixed as a fee for giving such notice by section 3785 of the Political Code, should also have been tendered. The county auditor, in his estimate of the amount to be paid for redemption, included this item in the certificates issued by him under the provision of section 3817 of the Political Code, and the treasurer refused to accept

the amount tendered, or to give to the plaintiff the certificates named in said section.   The plaintiff thereupon brought this action to compel the treasurer to accept the sum tendered as above, and to give to it the triplicate receipts prescribed by the aforesaid section 3817. The cause was tried in the court below and judgment rendered for the defendant, from which, and from an order denying a motion for a new trial, the plaintiff has appealed.

" Several questions are discussed in the briefs of counsel, but the conclusion which we have reached upon one of these questions renders it unnecessary to determine the others.   In May, 1892, the defendant House, acting under the direction of the state controller, gave the notices referred to in section 3785 of the Political Code, and filed his affidavit thereof with the tax-collector of Los Angeles county.   These several notices were signed ' state of California, by R. F. House, agent,' and in the affidavit of service filed with the tax-collector House stated that he was the 'agent for the purchaser of the property described in the foregoing notice.'   House also testified at the trial that prior to the date of giving the notice ' he had been appointed by the state of California, through the state controller and attorney general, and was authorized to serve notices to cause the redemption of property sold to the state for taxes.'

" The question here presented is not the right of the state to the issuance of a deed, but the right of the delinquent taxpayer to redeem the land struck off to the state under the provisions of section 3773 of the Political Code, and this right depends upon his compliance with the requirements of the statute in that behalf, the particular question here presented. being whether there was a tender of a sufficient amount of money to effect the redemption.   It is insisted by the defendants that the plaintiff, in addition to the amount tendered by it, should have also tendered three dollars for each of the notices given by House, amounting to two hundred and one dollars in all; while the plaintiff insists

that the notice given by House was without authority of law, and consequently that the item of three dollars for giving such notice was not a part of the 'costs and expenses of the redemption.' Section 3817 of the Political Code provides that when the state has become the purchaser of land sold for delinquent taxes the person whose estate has been sold, or his successor in interest, may redeem the same by paying the amount of taxes due thereon at the time of the sale, with interest thereon, and any other taxes then delinquent thereon, together with a sum of money equivalent to the taxes that would have been subsequently assessed; 'and also all costs and expenses, and twenty-five per cent penalty which may have accrued by reason of such delinquency and sale, and the costs and expenses of such redemption.' Unless the item of three dollars for giving the notice is a part of the 'costs and expenses' which have accrued 'by reason of the delinquency and sale,' the plaintiff was under no obligation to tender it to the treasurer in order to effect a redemption from the sale. Section 3785 makes provision for the issuance of a deed to the purchaser in case there is no redemption from the tax sale, and requires that before making application for a deed the 'purchaser' must serve upon the owner of the property purchased a written notice, containing certain statements, and that for the service of said notice and making an affidavit thereof the 'purchaser' shall be entitled to receive the sum of three dollars, 'which sum of three dollars shall be paid by the redemptioner at the same time and in the same manner as other costs, percentages, penalties, and fees are paid.' The notice thus required is to be served by the purchaser, or by some one in his behalf, whom he has authorized to serve it. Such notice, served by a stranger, without any authority from the purchaser, would not satisfy the requirements of the statute, or entitle the purchaser to insist upon a payment or tender of the three dollars, in order that a redemption might be effected; and the rule in

this respect is the same whether the state or an individual is the purchaser.

"The state can act only through officers or agents, and the duties of its officers or agents must be defined by statute, and the officer or agent who would give this notice must show his authority therefor under some statute.   We have not been cited to any statute which confers upon either the controller or attorney general the right to appoint an agent for the purpose of giving this notice, or to take any step in reference to the issuance of a deed to the state for the property which may be struck off to it under the provisions of section 3775 of the Political Code.   The duties of each of the above-named officers are defined in the Political Code—those of the controller in sections 433 to 444, and those of the attorney general in sections 470 to 475—and in neither of these sections can there be found any authority for either of these officers to give the above notices, or for the appointment of an agent to give the notices in behalf of the state.   The provision in section 433, making it the duty of the controller 'to superintend the fiscal concerns of the state,' only designates him as the accountant of the state's finances, and does not give to him any function regarding the same until the money over which he is to exercise a supervision or control has come into the hands of the treasurer, or some fiscal agent of the state, or has become an obligation in favor of the state, for which the state is entitled to an immediate enforcement.   The duty imposed upon this officer by virtue of subdivision 16 of this section, 'to direct and superintend the collection of all moneys due the state, and institute suits in its name for all official delinquencies in relation to the assessment, collection, and payment of the revenue,' arises only when the moneys thus to be collected are 'due the state,' and after there has been some official delinquency in relation to the collection or payment of the revenue.   But, if the state has become the purchaser of land at a delinquent tax sale the tax has been extinguished by the

sale, and the state, instead of being a creditor of the taxpayer, or entitled to receive any money due to it for taxes, has acquired an interest in the land, which is to be divested only by some affirmative action on the part of the delinquent taxpayer. The care and direction of the state's interest in land would naturally fall to the department of the surveyor general; but whether that officer has been intrusted with any function in reference to the lands purchased at a delinquent tax sale, or whether the state has failed to make any provision in reference thereto, it is clear that neither the controller nor the attorney general has been intrusted with the duty of guarding the state's interest therein.

"It is not the policy of the state to increase the burdens of taxation beyond the necessary cost of collection, or to impose any greater burdens in a redemption from a delinquent tax sale than is necessary to secure the payment of the original tax. All matters of taxation are resolved in favor of the taxpayer, and express statutes should be found for each item of cost to be imposed upon him. There is no provision of law for the disposition of the three dollars claimed herein as a fee for giving the notice. Neither the controller nor the attorney general is entitled to it as a fee, or as a compensation for any official duty; nor, if the state is entitled to receive it, are they authorized to give it to any agent they may select for the purpose of serving the notice. Section 3816 provides that ' the original tax and the twenty-five per cent and interest paid in redemption shall be apportioned between the state and county in the same proportion that the state tax bears to the county tax,' and then declares, ' the moneys received for delinquencies shall be paid to the county,' and makes no provision for the disposition of this item. If the legislature had intended that the state, like any other purchaser, should be entitled to charge and receive this item of three dollars, it would have made some provision that it should be paid to it out of the redemption money, and not that it should be paid to the county.

" We are of the opinion that the amount tendered by the plaintiff was sufficient for the purpose of redeeming the lands in question, and that the treasurer should have received the money, and issued to it the certificates authorized by the statute."

A re-examination of the question serves to convince the court of the soundness of the views thus expressed.

The legislative enactments contemplate that the state in procuring a deed shall resort to the same processes made necessary for a private purchaser, the scheme of which is set forth in section 3785 of the Political Code. But in so doing, the legislature, by oversight seemingly, failed to empower any officer or agent to give the requisite notice. Certainly it has failed to empower either the attorney general or controller. It is a simple and not unusual case of legislative lapse.

While this court will go all reasonable lengths in interpreting the powers vested by the legislature in the ministerial officers of the state, to give effect to the laws and subserve the ends of justice, it will not by construction confer upon such officers authority which the legislature has seen fit to withhold. The dangers of such judicial legislation would far exceed any temporary advantage to the state which might arise from it.

The judgment and order denying a new trial are reversed.

Van Fleet, J., dissenting. I dissent.

Further consideration of this case on rehearing has satisfied me that the conclusion reached in Department, and now adhered to, in the main opinion, is wrong as involving a too narrow construction of the statute. While it is true that no specific provision of the statute gives to the controller or attorney general the power to serve the notice required by section 3785 of the Political Code, I think that such power, as to the controller at least, fairly and necessarily arises by implication, when the several sections of the code bearing upon the subject are construed together.

In the first place, the code expressly provides for the state becoming the purchaser at delinquent tax sales (Pol. Code, sec. 3773); and there are provisions expressly contemplating the making of a deed to the state in any instance where it becomes such purchaser. (Pol. Code, sec. 3817.) At the same time the state is not exempted from the provisions of sections 3785 requiring the purchaser, or some one authorized in his behalf, to give notice of his application for a deed, since it is therein provided that "no charge must be made by the collector for the making of any such deed, *where the state is the purchaser;* and the acknowledgment of all such deeds . . . . shall be taken by the county clerk free of charge." In fact, it is evident that the state has been put in the same category in all respects, excepting as to the time within which property sold to it can be redeemed, as private individuals.

This being so, who is to act in behalf of the state in giving the notice required by section 3785? Certainly the legislature should not be held to have left so glaring a hiatus in the law upon a subject of so much importance to the people, if by a reasonable construction the apparent omission in the scheme provided can be supplied. And I think this can be done by a reference to the sections of the code prescribing the duties of the controller.

By section 433 of the Political Code it is made the duty of the controller "to superintend the fiscal concerns of the state." He is required to direct and superintend the collection of all moneys due the state in relation to the "assessment, collection, and payment of the revenue," and against persons who have become possessed of money or property of the state, which they fail to pay over, and against *all debtors* of the state. And he may bring suit to recover in all such cases.

The powers thus conferred are very broad and comprehensive in their scope, and it is apparent that they must be necessarily held to include any incidental acts requisite to give full and complete effect to the primary

functions therein enumerated. He is given power to institute suits to recover not only the revenue but the *property* of the state. By its purchase at a tax sale the state acquires a property in the land, which it is thus made the duty of the controller to perfect and secure. This can only be done by the giving of the notice required by section 3785, and that the power of the controller to give such notice is necessarily implied is, to my mind, obvious. Having the power, and the act being merely ministerial, he can direct it to be done through the agency of another. And the existence of this power in the controller was, in my judgment, in contemplation by the legislature when they failed to make more specific provision on the subject.

GAROUTTE, J., concurred.