[S. F. No. 545.    Department Two.—September 4, 1897.]

Z. RUSS & SONS COMPANY, Appellant, *v.* JOHN L. CRICHTON, as Tax Collector, etc., Respondent.

<table><tr><td>117</td><td>695</td></tr><tr><td>134</td><td>480j</td></tr></table>

Statute of Limitations, when Inapplicable to State.—The rule is settled that statutes of limitations do not apply to or bind the state, unless they are made to do so by express words or necessary implication; and the fact that the general words of the statute may be apparently broad enough to include, will not be sufficient to affect its rights, unless that construction is clear and indisputable upon the text of the statute.

Id.—Delinquent Taxes—Sale to State—Time for Deed—Limitation Inapplicable.—The provision of section 3788 of the Political Code, as amended in 1885, that "in all cases where land has been heretofore sold for delinquent taxes, the deed therefor must be made within one year and three months after this act takes effect, and, unless so made, the purchaser shall be deemed to have relinquished all his rights under such sale," does not apply to the state.

Taxation—Equitable Title to State Lands—Sale for Delinquent Taxes—Subsequent Patents—Presumption—Injunction against Deed.—The equitable title to lands sold by the state, for which cer-

tificates of purchase have been issued, on payment of part of the purchase price, is subject to taxation, and when such lands are afterward sold to the state for delinquent taxes, the equitable title revests in the state, subject to redemption as provided by statute; and if thereafter the state issues patents for the land, such patents must be presumed to have been regularly issued in performance of official duty, after compliance with all conditions precedent, and to have passed the complete title of the state, and the owner of such title may enjoin the execution of a deed to the state under the sale for delinquent taxes.

Id.—Void Assessment—"Known and Unknown Owners."—Where the land described in an assessment and in the certificate of sale for delinquent taxes was assessed to a person named, "and to all owners and claimants known and unknown," the assessment and certificate are void, and a tax deed containing such a recital is void on its face, and it cannot be shown that there was in fact a valid assessment.

Id.—Void Tax Deed—Cloud upon Title—Injunction.—A tax deed which is void upon its face cannot cast a cloud upon the title of the owner of the land, and a court of equity will not enjoin the issuance of such void deed.

Appeal from a judgment of the Superior Court of Humboldt County. G. W. Hunter, Judge.

The facts are stated in the opinion.

*J. H. G. Weaver*, and *W. F. Clayborne*, for Appellant.

*L. M. Burnell*, for Respondent.

Belcher, C.—This action was brought to enjoin the defendant, as tax collector of the county of Humboldt, from executing to the state of California, and filing for record in the office of the county recorder of the county, tax deeds for the lands described in the complaint. Three causes of action are set forth in the complaint, to each of which a general demurrer was interposed and sustained. Thereupon judgment was entered that the plaintiff take nothing by the action, and from that judgment it has appealed.

The facts stated in the complaint are in substance as follows:

The lands described in the first cause of action were all state lands, and are designated as parcels 1, 2, 3, and 4.

The state made a partial sale of the lands, and on

receiving twenty per cent of the purchase price issued its certificates of purchase therefor. After the issuance of the certificates of purchase, and prior to the issuance of the patents, certain taxes were levied upon the said lands, which became delinquent, and after due proceedings had the lands were sold to the state for the taxes due and unpaid thereon, together with the costs and charges. The lands designated as parcels 1, 3, and 4 were sold to the state on the fifth day of March, 1880, and those designated as parcel 2 were sold to the state on the third day of March, 1881, for the delinquent taxes for the preceding years respectively. The said lands have never been redeemed from these sales.

The state sold and conveyed by its patents duly issued all its right, title, and interest in and to the said lands as follows: On January 2, 1884, to A. N. Guptill, the lands designated as parcel 1; on November 28, 1883, to A. N. Guptill, the lands designated as parcels 2 and 3; and on February 27, 1883, and June 27, 1884, to A. Putnam and Joseph Russ (a portion to each), the lands designated as parcel 4; all of which patents are of record in the recorder's office of the county.

The lands described in the second cause of action were government lands, and in January, 1872, and December, 1877, were sold and patented by the United States to one James R. De Lasaux. In 1884 the said lands were assessed to one Emma S. King, and the taxes levied thereon were not paid, but became delinquent. After due proceedings had, the lands were, in March, 1885, sold to the state for the taxes due and unpaid thereon, together with the costs and charges. The said lands have never been redeemed from this sale.

The land described in the third cause of action was state land, and was sold and conveyed by a state patent to Joseph Russ in March, 1878. In March, 1875, and prior to the issuance of the certificates of purchase therefor, the said land was assessed to "Henry Loose and to all owners and claimants known and unknown," and was so listed upon the assessment-books of the

county. Taxes were levied thereon but not paid, and in March, 1876, the land was sold to the state for the taxes due and unpaid thereon, together with the costs and charges. The certificate of sale of the land, made and filed with the county recorder, stated that the land was assessed for the year ending June 30, 1876, to "Henry Loose and to all owners and claimants known and unknown."

It is also alleged in the complaint that the plaintiff has become the owner in fee of all the lands described in each of the said causes of action through various mesne conveyances from the patentees thereof; that the state has never made application for a deed for any of said lands, and no deed for the same has ever been made or issued to it; and that under the sales set out the defendant, as tax collector, now threatens to and will if not restrained, execute to the state and file for record his deeds for the said lands, and thereby cast a cloud upon plaintiff's title thereto and cause an irreparable injury to plaintiff.

It is contended for appellant that the court erred in sustaining the demurrer to the first cause of action, because (1) under the provisions of section 3788 of the Political Code, as it stood from the time it was amended in 1885 to the time it was again amended in 1895, the state had lost all right to demand or receive the tax collector's deeds for the said lands; and (2) when the state patented the said lands it sold and conveyed to the patentees all its right, title, and interest therein and thereto.

1. During the years above referred to, section 3773 of the Political Code provided that in certain cases real property offered for sale for taxes due thereon must be struck off to the State as the purchaser. Section 3780 provided that a redemption of the property sold might be made within twelve months from the date of the purchase, or at any time prior to the giving of the notice and the application for a deed as provided in section 3785 of the code. Section 3785 provided that, if the

property is not redeemed within the time allowed by law for its redemption, the collector, or his successor in office, must make to the purchaser, or his assignee, a deed of the property; *provided,* however, that the purchaser, or his assignee, must, thirty days before the time for redemption expires, or thirty days before he applies for a deed, serve upon the owner of the property, or the person occupying the same, a written notice stating, etc. And section 3788 provided what should be done with deeds to the state of state lands sold for delinquent taxes, and how the lands should again become subject to entry and sale, and it closed with the following provision: " In all cases where land has been heretofore sold for delinquent taxes, the deed therefor must be made within one year and three months after this act takes effect, and, unless so made, the purchaser shall be deemed to have relinquished all his rights under such sale."

The question then is, Does this last provision apply to the state?

In *Tuttle* v. *Block,* 104 Cal. 443, it was held that the said provision was " clearly a prospective statute of limitation of the time within which the tax deed must have been made"; and the rule is settled beyond all controversy that statutes of limitation do not apply to or bind the state, unless they are made to do so by express words or necessary implication.

The language of the provision, "in all cases," etc., is apparently broad enough to include the state; but a statute will not always be held to include every case to which it may appear on its face to be applicable.

Section 15, article XX, of the constitution, provides: "Mechanics, materialmen, artisans, and laborers of every class shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the legislature shall provide by law for the speedy and efficient enforcement of such liens." And section 1183 of the Code of Civil Procedure declares that me-

chanics and materialmen shall have a lien for labor and materials furnished by them, and used in the construction of any building or other structure. Still, in *Mayrhofer* v. *Board of Education*, 89 Cal. 110, 23 Am. St. Rep. 451, it was held that, under these provisions of the constitution and code, no public property or public building was subject to a mechanic's lien, and no such lien could be enforced against a schoolhouse erected by a public school district. And the court quoted approvingly the following language used by Mr. Justice Story in *United States* v. *Hoar*, 2 Mason, 314: "In general, acts of the legislature are meant to regulate and direct the acts and rights of citizens; and, in most cases, the reasoning applicable to them applies with very different, and often contrary, force to the government itself. It appears to me, therefore, to be a safe rule, founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the act."

So, in 1893, an act was passed by the legislature entitled "An act providing for the sale of railroad and other franchises in municipalities, and relative to granting franchises." (Stats. 1893, p. 288.) The act provided that every franchise or privilege to construct or operate railroads along or upon any public street " shall be granted upon the conditions in this act provided, and not otherwise"; that is, that after advertisement stating certain facts, and calling for bids, the franchise or privilege must be awarded to the highest bidder. In considering this act, it was held in *People* v. *Craycroft*, 111 Cal. 544, that its provisions requiring the sale of railroad franchises in the streets of cities to the highest bidder must be construed as applying only to cases of street railroads, and not to a steam railroad which seeks to extend its track through the streets of a city en route between its termini. The court said: "It cannot be denied that the language of this act is broad enough to include the franchise and privilege which

the petitioner seeks; but a statute will not always be held to include every case which falls within its literal terms. . . . . The word 'railroad' is certainly broad enough to cover a steam railroad, and the privilege of laying and operating a steam railroad through a city is clearly included in 'any privilege whatever'; but at the same time, if it is perfectly evident from the whole tenor of this act, and other acts *in pari materia,* that the legislature could not have intended the consequences of a literal construction of the language above quoted, such a construction cannot obtain."

In *San Francisco etc. Co.* v. *Banbury,* 106 Cal. 129, it was held that where land is sold to the state for delinquent taxes, no express authority is conferred upon the controller or attorney general to give notice for the state of an intention to apply for a deed, as required by section 3785 of the Political Code, and hence, the state is not entitled to demand or receive the three dollars for giving such notice, which sum the section declares "shall be paid by the redemptioner at the same time and in the same manner as other costs, percentages, penalties and fees are paid." The court said: " The legislative enactments contemplate that the state, in procuring a deed, shall resort to the same processes made necessary for a private purchaser, the scheme of which is set forth in section 3785 of the Political Code. But, in so doing, the legislature, by oversight seemingly, failed to empower any officer or agent to give the requisite notice."

It is the policy of the state to make assessed property pay the taxes levied upon it when they are not paid by the owner. It seeks to make the burden on the delinquent taxpayer as light as possible, and to afford him ample opportunity to redeem his property; but, at the same time, the rights of the state to collect the taxes are carefully guarded, and strict provisions have been made to compel all property to bear its burden of taxation. The construction of the provision in question, contended

for by appellant, if sustained, would prevent the state from ever recovering any of the delinquent taxes due on land sold to it therefor prior to the amendment of 1885.   Such a result would be against the policy of the law, and was evidently not contemplated by the legislature.

We conclude, therefore, that it does not appear from any express provision of the statute, or from any necessary implication, that the limitation of time to a year and three months, within which a deed for land sold for delinquent taxes must be made, was intended to apply to the state, and hence it must be held that it did not so apply.

2. As to the patents.   The state owned the lands, and when, on payment of a part of the purchase price, it issued its certificates of purchase therefor, an equitable title vested in the purchasers, which was subject to assessment for taxes.   And when the lands were afterward sold to the state for delinquent taxes, that equitable title revested in the state, subject to redemption as provided for by statute.   The complaint alleges that thereafter the state sold and conveyed all its right, title, and interest in and to said lands, by patents duly issued, to the grantors of plaintiff, and that plaintiff is now the owner of said lands in fee; and these allegations are admitted by the demurrer to be true.   The presumption is that official duty has been regularly performed (Code Civ. Proc., sec. 1963, subd. 15), and it must be presumed, therefore, nothing to the contrary appearing, that when the officers of the state charged with that duty executed and delivered the patents, all precedent conditions requisite to their issuance had been fully performed, and that the patents passed a complete title as alleged.

This being so, we think the first cause of action stated facts in this regard sufficient to constitute a cause of action, and that the court erred in sustaining the demurrer thereto.

The second cause of action involves only one point,

and that is the same as the one first arising upon the first cause of action. As we have seen, appellant's contention as to that point cannot be sustained, and there was, therefore, no error in sustaining the demurrer to this cause of action.

In the third cause of action there is also involved only a single point, and it has many times been decided by this court adversely to appellant's contention. The land therein described was assessed to "Henry Loose and to all owners and claimants known and unknown," and the certificate of sale contained the same recital. The assessment and certificate were void. (*Grotefend* v. *Ultz*, 53 Cal. 666; *Daly* v. *Ah Goon*, 64 Cal. 512.) "The matters recited in the certificate of sale must be recited in the deed." (Pol. Code, sec. 3786.) A tax deed containing such a recital is void on its face, and it cannot be shown that there was in fact a valid assessment. (*Grimm* v. *O'Connell*, 54 Cal. 522; *Hearst* v. *Egglestone*, 55 Cal. 365; *Brady* v. *Dowden*, 59 Cal. 51; *Greenwood* v. *Adams*, 80 Cal. 74.)

As the deed, which the plaintiff seeks to have the defendant enjoined from making, would be void on its face, it would not cast a cloud upon his title. "The true test, as we conceive, by which the question whether a deed would cast a cloud upon the title of the plaintiff may be determined, is this: Would the owner of the property, in an action of ejectment brought by the adverse party, founded upon the deed, be required to offer evidence to defeat a recovery? If such evidence would be necessary, the cloud would exist; if the proof would be unnecessary, no shade would be cast by the presence of the deed." (*Pixley* v. *Huggins*, 15 Cal. 134; *Archbishop of San Francisco* v. *Shipman*, 69 Cal. 591.)

A court of equity will not enjoin the issuance of a deed void on its face, and the demurrer to this cause of action was therefore properly sustained.

We advise that the judgment, in so far as it is based on the first cause of action, be reversed, and the cause remanded with directions to the court below to overrule

the demurrer; and, in so far as it is based on the second and third causes of action, that it be affirmed.

SEARLS, C., and CHIPMAN, C., concurred.

For the reasons given in the foregoing opinion the judgment, in so far as it is based on the first cause of action, is reversed, and the cause remanded with directions to the court below to overrule the demurrer; and, in so far as it is based on the second and third causes of action, it is affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.