[Civ. No. 1571. Third Appellate District.—October 6, 1916.]

## R. A. CORSON, Respondent, v. CHARLES CROCKER et al., Appellants.

IRRIGATION DISTRICT—LEVYING OF ASSESSMENT—MANNER AND FORM.— Under the provisions of the act of 1897 (Stats. 1897, p. 254), authorizing the organization and government of irrigation districts, it is not necessary that the levying of an assessment by the board of directors for the purposes of the district shall be by or in the form of a resolution.

ID.—ASSESSMENT-ROLL AND DELINQUENT LIST—CERTIFICATION NOT ESSENTIAL.—Under the provisions of such act, it is not necessary that the assessment-roll and delinquent list be certified by any person or officer of the irrigation district.

ID.—DESCRIPTION OF PROPERTY ASSESSED — SUFFICIENCY OF.—Under such act, assessed property described as "Modesto Bl'k 123, lots 1 to 5 inclusive," in the assessment-book under the heading "Description of Property," is sufficient.

ID.—SUFFICIENCY OF DESIGNATION OF LAND.—Where the designation of the land in the assessment-book is such as to afford the owner

the means whereby the land may readily be identified, or does not mislead or is not calculated to mislead him, it is sufficient.

ID.—PUBLICATION OF DELINQUENT NOTICE—EVIDENCE—SUFFICIENCY OF. The *prima facie* showing made through proof of the collector's deed that notice of delinquency was duly published is not overcome by testimony that the numbers of a certain newspaper had been examined and that the notice was found in but one issue, where it is not shown that the notice was published in such newspaper.

ID.—DATE OF CERTIFICATE OF SALE.—Under the provision of such act requiring that the collector must make out in duplicate a certificate of sale of property sold for delinquent assessment "dated on the day of sale," a certificate is not void because dated on a day subsequent to the sale, where it is recited therein that the property may be redeemed within twelve months from the date of sale, which date of sale is stated in the recital.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

F. W. Reeder, and Charles S. Conner, for Appellants.

E. H. Zion, and L. L. Dennett, for Respondent.

HART, J.—This is an action to quiet title to certain real estate. The plaintiff had judgment, from which this appeal is prosecuted by the defendant, Josephine Arata, upon a transcript of the record prepared in pursuance of the provisions of section 953a of the Code of Civil Procedure.

The plaintiff claims title under a deed executed by the Modesto Irrigation District, a corporation, the property in dispute lying within the boundaries of said district, and having been sold on default of the owner in the payment of an assessment levied thereon by the district in the year 1905.

The appealing defendant challenges the validity of the sale and deed, and the objection so made presents the only questions involved in the controversy.

The lands in question consist of lots 1, 2, 3, 4, and 5, in block 123, of the city of Modesto, and, as stated, are embraced within the limits of the said irrigation district, and were assessed to the appealing defendant.

The appellant was the daughter of one Giovanni Arata, who died testate on the twenty-second day of March, 1897.

With the mother, and other surviving children of the deceased, she was made a devisee in trust of a certain designated portion of the residue of his estate, of which the lots in dispute constituted a part. The record discloses that the lots in question were, together with lots 6, 7, 8, 9, and 10, in the same block, by the trustee conveyed by deed to one Susan Springsteen, on the second day of February, 1903, and that said deed was duly recorded in the office of the county recorder of Stanislaus County on the fifteenth day of December, 1903. This conveyance appears to have been executed prior to the partition of the residue of the said estate and the assignment to the devisees in trust of their respective interests therein in severalty. But it is further made to appear that a partition suit was subsequently filed in the superior court of Stanislaus County, wherein and whereby the several interests of the parties in the residue of the estate were set off to them in severalty, and that by the decree in said action the appellant was awarded title in fee to the particular lots involved in this controversy.

The above recital is important only because thus it is made to appear that the record shows that legal title to the lots in dispute was, notwithstanding the conveyance to Springsteen, still in the appellant, and that the assessment involved herein was properly made against the lots in the latter's name.

By finding No. 4 the court in effect found that the plaintiff's title was deraigned from the sale of the property for the satisfaction of the assessment above referred to, and further found that for more than five years prior to the commencement of this action he and his predecessors in interest have been in actual, exclusive, and continuous possession of said lots, which possession was founded on the "certificate of sale and deed for delinquent irrigation assessment, issued by the Modesto Irrigation District, . . . and has himself and his said predecessors in interest paid all taxes and assessments of any kind and description and character levied on or against said property for the said period of five years preceding and immediately prior to the date of the filing of the complaint herein."

By finding No. 5, the court further found: "Fifth: That the said assessment of the Modesto Irrigation District, for the nonpayment of which said premises were sold, was duly and regularly levied according to law, and that the said irri-

gation district and its officers complied with all the provisions of law prior to and leading up to the sale and the issuance of the certificate hereinbefore referred to, and that thereafter a deed was duly and regularly issued by the Modesto Irrigation District conveying to the predecessors in interest of the said plaintiff the said premises, and that all proceedings leading up to said deed were duly and regularly taken and that the said deed conveyed to and vested in the grantee therein named a good and perfect title to the said premises, free from all claims and demands of every character of the defendants, Josephine Arata, Assunta Arata, as trustee, and all persons holding by, through or under them."

The appellant claims that said findings are not supported by the evidence, and thus the objections urged against the legality of the assessment and sale of the property in question are raised. These objections, specifically stated, are: 1. That it does not appear that the board of directors of the said irrigation district had, in proper form, and previously to the levying of the assessment, passed a resolution authorizing the assessment; 2. That the assessment-roll and the delinquent list "are not certified"; 3. That "the assessment-book and delinquent roll show that this property was not properly listed, being under the head of 'fractional or metes and bounds' rather than under 'city' or 'town' or 'city' or 'town lots'"; 4. That notice of delinquency is shown to have been published for one week only, whereas the statute requires that publication of such notice shall be for two weeks; 5. That the certificate of sale is void because it was dated on a date subsequent to the day upon which the sale was made.

The Modesto Irrigation District was organized under the provisions of an act of the legislature of 1897, entitled, "An act to provide for the organization and government of irrigation districts, and to provide for the acquisition or construction thereby of works for the irrigation of the lands embraced within such districts, and, also, to provide for the distribution of water for irrigation purposes." (Stats. 1897, p. 254 et seq.)

Section 43 provides for the sale by the tax collector of the district of all lands within the district upon which assessments duly levied under the act have not been paid. Section 45 provides that, upon a sale of real property for delinquent assessments being made, the collector, after receiving the

amount of the assessments and costs, "must make out in duplicate a certificate, dated on the day of sale, stating (when known) the name of the person assessed, a description of the land sold, the amount paid therefor, that it was sold for assessments, giving the amount and year of the assessment, and specifying the time when the purchaser will be entitled to a deed. The certificate must be signed by the collector, and one copy delivered to the purchaser, and the other filed in the office of the county recorder of the county in which the land is situated."

Section 48 of said act provides:

"The matter recited in the certificate of sale must be recited in the deed, and such deed duly acknowledged or proved is *prima facie* evidence that,

"(a) The property was assessed as required by law.

"(b) The property was equalized as required by law.

"(c) That the assessments were levied in accordance with law.

"(d) The assessments were not paid.

"(e) At a proper time and place the property was sold as prescribed by law and by the proper officer.

"(f) The property was not redeemed.

"(g) The person who executed the deed was the proper officer."

The action is, as seen, one to quiet title, in which the plaintiff alleges that he is the owner in fee of the property in dispute. The plaintiff having supported his claim of ownership by proof of a tax deed to the property, said deed containing all the matters recited in the certificate of sale, as required by the statute, and having been duly acknowledged, a *prima facie* case was thus made by the plaintiff, and the burden was thereupon devolved upon the appellant to establish her title to the property by a preponderance of the evidence. To do this it was requisite that she should show some defect or defects in the assessment or other proceedings leading to the sale and, finally, to the execution of the tax deed to the purchaser at the tax sale, fatal to the legality of the sale or said deed. As before stated, she made an attempt at such showing but we think without success. The points made against the validity of the assessment we shall consider in the order in which they are above stated.

1. The act of 1897 authorizing the organization and government of irrigation districts nowhere expressly requires that the levying of an assessment by the board of directors for the purposes of the district shall be by or in the form of a resolution. The law, of course, requires the board of directors to levy an assessment, when necessary, but whether this act be done by a mere motion, or in the form of a resolution, is immaterial so long as it constitutes the action of the board and the proceeding is otherwise properly carried out and duly preserved in the records of the board or the books required to be kept for that purpose. (Act of 1897, secs. 34 and 39, pp. 265, 267.)

The reply to the proposition that the "assessment-roll and delinquent list are not certified" is the same as the answer given above to the proposition that the board did not proceed to levy the assessment in the form of a resolution. Counsel have not pointed to any provision of the act in question requiring the assessment-roll and delinquent list to be certified by any person or officer of the district, and, after a careful examination of the statute, we have found no such requirement. It ought not to be necessary to suggest that the governing body of the district was required to take no step in the tax proceedings not expressly or by necessary implication required by the statute.

3. The next objection is that the assessment-book and delinquent list disclose that the property was not properly listed. The specific objection is as above stated.

Section 35 of the Irrigation Act provides, *inter alia:* That the assessor must prepare an assessment-book, with appropriate headings, in which must be listed all real property within the district, in which must be specified, in separate columns, under the appropriate head: (a) the name of the person to whom the property is assessed . . . ; (b) land by township, range, section, or fractional section, and when such land is not a congressional division or subdivision, by metes and bounds, or other description sufficient to identify it, giving an estimate of the number of acres, locality, and the improvements thereon; (c) city and town lots, naming the city or town, and the number and block, according to the system of numbering in such city or town, and the improvements thereon.

By stipulation of counsel on both sides, the memoranda of the map of the city of Modesto were received in evidence and considered in lieu of the map itself, and from the memoranda so received it appears that the lots in question were delineated on said map and described as lots 1, 2, 3, 4, and 5, in block 123, in said city. It is admitted that that portion of the city of Modesto embracing said lots is included within the boundaries of the Modesto Irrigation District. In the assessment-book of said district for the year 1905, as well as in the delinquent assessment-book of said district for said year, the property in dispute is listed and described as follows, under the heading: "Description of Property": "Modesto, Bl'k 123, lots 1 to 5, inclusive." In the assessment-book, the assessed value of the property is stated and in the delinquent assessment-book the value of said property is given under substantially the same heading.

The description of the property as above shown was in substantial compliance with the requirements of the statute, and it was sufficiently clear and definite to facilitate the ready identification and location of the land by means of the deed itself, and, therefore, sufficient to apprise the owner that an assessment-lien subsisted upon the lots, and so enable her to discharge such lien. If the designation of the land in the assessment-book is such as to afford the owner the means whereby the land may readily be identified, or does not mislead or is not calculated to mislead him, it is sufficient. (Cooley on Taxation, p. 745; *San Gabriel Co.* v. *Wittmer Co.,* 96 Cal. 635, [18 L. R. A. 465, 31 Pac. 588]; *Best* v. *Wohlford,* 144 Cal. 733, 736, [78 Pac. 293]; *Baird* v. *Monroe,* 150 Cal. 560, 569, [89 Pac. 352].) As before suggested in another form of expression, the description of the lots here fully measured up to the test thus stated.

4. We cannot say that the trial court was not justified in finding, as impliedly it did so find, that the statutory requirement as to the publication of notice of delinquency was complied with. Section 41 of the statute provides that such notice must be published by the collector of the district in a newspaper published in each county in which any portion of the district may lie for the period of two weeks. The record here does not show in what particular newspaper said notice was ordered to be published. One of the attorneys for the appellant, however, was sworn as a witness, and tes-

tified that he had examined several numbers of the "Weekly News" (presumably a newspaper), and that he had found the notice referred to published in one issue only of said newspaper. This constituted all the showing that was made which tended in any degree to disclose that the notice had not been published as prescribed by the statute; and it was wholly with the trial court to decide whether the showing so made was sufficient to overcome the *prima facie* showing through proof of the deed that the notice referred to was published as required. If the appellant had shown by clear and direct proof that the "Weekly News" was a newspaper published in Stanislaus County, in which the district is situated, that the notice had been by the collector, within twenty days after the delivery of the assessment-book to him by the secretary of the board, given to said newspaper and no other published in said county for publication therein, and that said notice had not been published in said paper for and during the full time prescribed by the statute, there would then have been a sufficient showing of noncompliance with the requirement of the statute in that regard to have overcome the effect of the deed as *prima facie* proof of the due regularity of all the proceedings leading to the sale and the execution of the deed. It is very clear that no such showing was made by the appellant. Indeed, so far as we are given direct information to the contrary upon the subject by the record, the collector might have ordered the publication of the notice in some newspaper published in Stanislaus County other than the "Weekly News," and that the notice was published in accordance with the mandate of the statute upon that subject.

5. The point that the certificate of sale is void because it was not dated on the day of the sale is without substantial merit. The point has its inspiration in the language of section 45 of the act. It will be recalled that that section reads, in part: "After receiving the amount of assessments and costs, the collector must make out in duplicate a certificate, *dated on the day of the sale,* stating," etc. The sale in this case was made on the twentieth day of February, 1906, and the certificate of sale dated the third day of March, 1906.

The certificate, it is to be observed, recites that the property may be redeemed from said sale "within twelve months from the date of said purchase, viz.: this 20th day of Feb-

ruary, 1906, by the person and in the manner as provided by law,'' etc. Thus (the certificate being in duplicate, one of which is to be recorded in the office of the county recorder) the most important object thereof was fully effectuated, viz., the giving of notice to the owner of the date of the sale and of the time when the purchaser will be entitled to a deed upon his (the owner's) default in redeeming the property within the time prescribed by the law and stated in the certificate. It thus must become clearly manifest that the mere dating of the certificate on some day subsequent to the day of the sale is not of material importance. It has so been held. The state of Idaho has a statute which contains a provision as to the dating of the certificate of a tax sale in the precise language of section 45 of the statute here in question. In *McCowan* v. *Elder,* 19 Idaho, 153, [113 Pac. 103], the tax sale was had on the 8th of July, 1904, and the certificate of sale was dated July 9, 1904. The supreme court of Idaho, replying to an objection to the certificate similar to that urged here, held that the language of its statute regarding the dating of the certificate was merely directory, and held the certificate in that case to be good. And, in the recent case of *Bruschi* v. *Cooper,* 30 Cal. App. 682, [159 Pac. 728], this court, having a similar proposition before it, cited and approved *McCowan* v. *Elder,* in so far as it held the language of the statute as to the dating of the certificate to be directory.

Besides the objections to the assessment proceedings above considered, the point is made that the property was sold for less than the total amount actually due on the assessment. There is no real ground for the support of the point, it being made to appear that certain items which counsel for the appellant have added to the assessment and penalties as computed by the assessor were figured in lead pencil on the face of the assessment-book and constituted no part of said book. The explanation, as shown by the record, is as follows: That the delinquent assessment involved herein showed the amount of the assessment to be $20.40, to which were to be added five per cent, amounting to $1.02, and costs amounting to fifty cents, making the assessment and penalties total the sum of $21.92; that the assessment-book for the year 1905 contained three columns, entitled as follows: the first, ''Amount of tax for semi-annual interest bonds''; second,

"Amount of tax for redemption of bonds," and third, "Amount of tax for general purposes"; that none of said three columns was used in the assessment of the property in question, and the same were blank and vacant, and that, in compiling and preparing said delinquent assessment, the assessor used the assessment-book of the irrigation district and, for convenience, "used the said three blank columns for the purpose of computing and determining the amount of costs and five per cent additional and the total assessment and the penalties," the same, as stated, being figured in lead pencil on the face of the assessment-book in said three columns. The figures so made appeared as follows: "$.50 in the column entitled, 'Amount of tax for semi-annual interest on bonds'; $1.02 in column entitled, 'Amount of tax for redemption of bonds,' and $21.92 in column entitled, 'Amount of tax for general purposes.'" Quite clearly, the addition of the three amounts would make the total assessment $23.44, whereas, as the record unquestionably shows, the actual amount due on the assessment, including the amount of the assessment and the sums of fifty cents and $1.02, penalties, etc., was $21.92, for which sum the property was sold.

It is further pointed out that the court found (finding 4) that the plaintiff had acquired title to the lots in controversy by adverse possession, and that there is no evidence to support said finding. Assuming this to be true, it is also true that the court by its fifth finding found that the plaintiff obtained title to the property by the tax sale and deed, and this finding is sufficient to support the decree quieting plaintiff's title to said property. Finding 4 is further and otherwise criticised, but the judgment could stand secure on the fifth finding with finding 4 entirely eliminated, and it is, therefore, immaterial whether the last-mentioned finding is or is not justly amenable to the criticism referred to.

We have found nothing in the record which would warrant us in holding that the decree assailed by the appellant is not justified by the facts and the law.

The judgment is accordingly affirmed.

Chipman, P. J., and Burnett, J., concurred.