[Civ. No. 3448. Third Appellate District.—June 23, 1928.]

DAVID ADAMS, Respondent, v. J. NOAH H. SLEE, Appellant.

Walter C. Maloy for Appellant.

G. E. Gleason and John F. Poole for Respondent.

BUCK (G. F.), J., *pro tem.*—The defendant appeals from a judgment quieting title of plaintiff and respondent to 40 acres of land in Madera County within the boundaries of the Madera Irrigation District. Plaintiff's claim of title is based on a tax deed executed by the collector of the Madera Irrigation District after a sale of the land for failure to pay certain taxes levied by the Irrigation District.

Appellant claims that the tax deed relied on by respondent is void for the following reasons: 1st. That the tax deed was prematurely executed; 2d. That there was an unlawful delay in the publication of the delinquent tax

list; 3d. That the provisions of section 44 of the Irrigation District Act (Stats. 1897, p. 269), requiring bidders to pay two dollars for a duplicate certificate of sale and redemptioner to repay the same and excusing such payment when the district is the purchaser is discriminatory and unconstitutional; and 4th. That the description of the property in the deed is fatally uncertain and defective.

And first as regards the claim that the deed was prematurely issued: It is true, as contended by appellant, that section 45 of the Irrigation District Act provides that a certificate of sale shall be dated on the day of the sale. But this provision has been held to be merely directory and not mandatory, since the object of the statute is satisfied if the actual date of sale is recited, so as to enable those concerned to know when the time for redemption expires. (*Corson* v. *Crocker,* 31 Cal. App. 626 [161 Pac. 287] ; 26 Cal. Jur. 422.)

In this case the sale was made August 26, 1921, the certificate of sale was issued August 27, 1921, and the tax deed was issued August 27, 1924.

Appellant's point as to the delay in the publication of the delinquent tax list is made only in his closing brief and is made with the suggestion that it "may be met by oral argument." There, however, was no oral argument. But the point will be considered.

The district was required by section 42 of the Irrigation District Act to publish the delinquent list on or before the first day of February. The list must be published at intervals for a period covering three weeks. The sale must then take place within twenty-eight days after the completion of the publication of the delinquent list. By the provisions of section 47 of the Irrigation District Act (Stats. 1909, p. 429), the delinquent taxpayer had the right to redeem his property at any time within five years after the date of the sale; and the purchaser, at the expiration of the five years after the date of the sale, had the right to have a tax deed issued to him, providing that the owner had not redeemed.

In this case the district, acting pursuant to a resolution of its board of directors, did not publish its delinquent list until July 30, 1921. On July 31, 1921, an amendment of section 47 of the act became effective (Stats. 1921, p. 1109).

By this amendment the period of redemption was shortened from five years to three years, so that the taxpayer must redeem within three years instead of five years, as under the old law (Stats. 1909, p. 429). Under the new law, the purchaser could get his deed after the expiration of only three years and need not wait for five years, as under the old act.

It has been held, however, that the delayed publication of the delinquent tax list does not of itself invalidate the tax sale and the deed based thereon. (*Smith* v. *Los Angeles City*, 158 Cal. 702 [112 Pac. 307]; *San Francisco* v. *La Society etc.*, 131 Cal. 612, 614 [63 Pac. 1016].) Also, it has been held that the right of redemption is fixed and controlled by the law in force at the time of the tax sale. (*Teralta Land etc. Co.* v. *Shaffer*, 116 Cal. 518, at 524, 525 [58 Am. St. Rep. 194, 48 Pac. 613]; *Biaggi* v. *Ramont*, 189 Cal. 675 [209 Pac. 892].)

As regards the contention that the irrigation statute is unconstitutional for the reason indicated in appellant's third point, the principle enunciated in the following cases is sufficient to sustain the constitutionality of the act in the particular wherein it is attacked by appellant. (*San Francisco etc. L. Co.* v. *Banbury*, 106 Cal. 129 [39 Pac. 439]; *Russ & Sons Co.* v. *Crichton*, 117 Cal. 695 [49 Pac. 1043]; *County of San Luis Obispo* v. *Murphy*, 162 Cal. 588 [Ann. Cas. 1913D, 712, 123 Pac. 808].) In other words, the classification made by the legislature was not an improper one.

Furthermore, even conceding that the provision of the statute attacked was not constitutional: In the case at bar, defendant and appellant was not affected for the reason that he had neither redeemed nor attempted to redeem his property.

And finally, as regards the alleged uncertain description in the deed: The amended complaint described the property whose title is sought to be quieted as follows: "That certain real property situate in the county of Madera, State of California, and described as follows: The East One-half (E ½) of the Northeast Quarter (N. E. ¼) of the Southwest Quarter (S. W. ¼) and the North Half (N ½) of the Southeast Quarter (S. E. ¼) of the Southwest Quarter (S. W. ¼) of Block six (6) of the Chowchilla

Ranch Subdivision No. 2, in Section Five (5), Township Eleven (11) South, Range Fifteen (15) East, M. D. B. & M., containing forty (40) acres, more or less.''

The following is the description set out in the tax deed: ''Chowchilla Ranch Subd. No. 2 Blk. 6, E½ of NE ¼ of SW ¼—N ½ of S. E. ¼ of SW ¼ in Sec. 5 Tp. 11 S. R. 15 E., M. D. B. & M., 40 acres.''

The description in the assessment-roll for the district is set out as follows:

| Description of property | Block | Section | Town-ship So. | Range East | Number of acres |
|---|---|---|---|---|---|
| Chowchilla Ranch Sub-division No 2, Block 6, E² of NE⁴ of SW⁴ N² of SE⁴ of SW⁴ | | 5 | 11 | 15 | 40 |

In the published delinquent list the description was set out as follows: ''Chow. Ranch Sub. No. 2, blk 6, E ½ of N E ¼ of S. W. ¼, N ½ of S. E. ¼ of S. W. ¼, 40 acres.'' The delinquent list as published also contained obvious explanations of the above abbreviations and also stated as follows: ''Wherever reference is made in the following descriptions of land in the Chowchilla Ranch Subdivision No. 2 it is understood that such reference is to the official map recorded Oct. 10, 1912, in Vol. 3 of Maps, page 9, Madera County Records.''

At the trial the deed containing the description just referred to was offered in evidence and also the official record of the map in book 3 of official maps at page 9, Chowchilla Ranch, Subdivision No. 2. The deed itself, however, makes no reference to the map. █ But it has been held proper to receive a recorded map in evidence in order to make complete the description set out in the deed. It was also testified that the lands shown on this map are ''usually throughout the county referred to by reference to this map,'' and that it is a well-known map of the Chowchilla Subdivision. (*Fox* v. *Townsend*, 152 Cal. 53, at p. 58 [91 Pac. 1004, 1007]; *Fitzimons* v. *Atherton*, 162 Cal. 630, at p. 632 [124 Pac. 250].)

Furthermore, there is delineated on said map the location of the northeast corner of township 11 south, range 15 east, in the United States Government survey and also the north, east, south, and west township lines and government courses, together with distances and actual acreages, so that the survey and map of the subdivision was physically tied into and connected with the government surveys. As indicated on the map itself, the subdivision comprises all of sections 6, 7, 16 of township 11 south, range 16 east, and all of sections 1 to 21, inclusive, and 28 to 32, inclusive, and 38 of township 11 south, range 15 east, M. D. B. & M. ▮ The court can take judicial notice of the location of these townships and sections, and of the fact that they can be identified on the ground by reference to the official government records. (Code Civ. Proc., sec. 1875, subds. 2, 3; *Rogers* v. *Cady*, 104 Cal. 288, 291 [43 Am. St. Rep. 100, 38 Pac. 81]; vol. 23, Cor. Jur., p. 95.) The distances from east to west indicated on the map give room for exactly seven sections, including section 5, having the contemplated official width of 320 rods, or 5,280 feet, and this is the exact width from east to west of each of the northern row of blocks, including block 6.

Therefore, from this map and with the judicial knowledge that the court can take of the relative location of section 5, in township 11 south, range 15 east, it is evident that the north, east, and west boundaries of block 6 of the subdivision referred to in the deed and map are coincident with the north, east, and west boundary lines of section 5 of township 11 south, range 15 east. And, as regards the southern boundary of block 6 and section 5, respectively, it appears from the location of the northern and southern township lines on the map of township 11 south, range 15 east and the distances between them as indicated on the map, that this township, if cut into official sections containing "as near as may be" 640 acres each, will then include a number of sections containing more than 640 acres. And *non constat* but what section 5 may be one of these.

Therefore, from the mere fact that block 6 contains 653 acres, it does not necessarily follow, as appellant appears to contend, that such block is not contained within section 5 or is substantially identical therewith, so far as the southern boundary also is concerned. It is therefore evident

that the mere addition of the government description to the description by block in the subdivision is, at the most, a mere matter of supererogation and reiteration, which does not create any uncertainty as to the reasonable possibility of the definite location of the land on the ground.

Furthermore, even though it should be assumed (*Quinn* v. *Windmiller*, 67 Cal. 461 [8 Pac. 14]), that the above government section 5 contains only 640 acres, nevertheless, by a plain mathematical computation it was shown in respondent's brief, without denial, that only six acres of the 40 acres in question are outside of the east half of the northeast quarter of the southwest quarter and the north half of the southeast quarter of the southwest quarter of section 5, township 11 south, range 15 east, while the balance of said forty acres is within the above fractional portion of said government section No. 5; and, furthermore, that the whole of said 40 acres, including the said six acres, is definitely and certainly located in the above fractional subdivision of block 6 ''of Chowchilla Ranch Subdivision No. 2.'' In other words, there was sufficient evidence to justify the trial court in rejecting as absurd and impossible any inference that the above six acres were in section 5 and in finding that there was nothing in the description in the deed or in the assessment-roll or in the delinquent list, which, if taken in connection with the map and its markings, would prevent a person from locating on the ground a definite and specific 40 acres of land in block 6. And in this connection Mr. P. M. Stafford, a surveyor of 30 years' practice, stated: ''I could make a survey of that portion of block 6 that layed within section 5 if I was confined to that description. I could make a survey of that portion of block 6 that is confined within the boundary of section 5.''

In the case of *Green* v. *Palmer*, 68 Cal. App. 393, at page 400 [229 Pac. 876, 878], it was claimed that the description of the property in the assessment-roll was ambiguous. But in that case the court said: ''We do not believe that it is necessary in matters of this kind to argue from the point of utmost absurdity, but even if we were to assume that anyone could have been misled by this description to a point of believing that his property was as described by respondent we would find that a portion at least of the prop-

erty in suit was covered by this description and a mere reference to the assessor's block book, or to the map of the Houghman Tract, would have enabled the investigators to have determined the true description.''

Counsel in his brief refers to a map marked ''Defendant's Exhibit A–4,'' which he contends ''shows a discrepancy between the block 6 referred to and section 5.'' But the record on appeals contains no exhibit bearing that designation, nor is there any such map brought up or properly described or authenticated. Also, the record is not clear as to the extent to which the witness was able to testify that said block 6 and section 5 were not identical, nor as to whether it was to a substantial extent, nor as to what county records the witness was relying on. Also, as a matter of fact, he did not testify that he could not locate the land in block 6.

The judgment is affirmed.

Hart, Acting P. J., and Plummer, J., concurred.