[Civ. No. 171. Third Appellate District.—March 30, 1906.]

## A. S. HONEYCUTT, Auditor of Madera County, Appellant, v. E. P. COLGAN, State Controller, Respondent.

TAXATION—SALE TO STATE—REDEMPTION—DISTRIBUTION OF PENALTIES.—Upon sale to the state for delinquent taxes, and subsequent redemption therefrom, the county is entitled to all penalties or percentages which accrued for delinquency prior to the sale; but the graduated penalties or percentages imposed for delinquency in redemption by section 3817 of the Political Code, as amended in 1895, are to be apportioned between the state and county, or city and county, under section 3816 of that code, in proportion to their several rates of taxation.

APPEAL from a judgment of the Superior Court of Madera County. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

R. R. Fowler, and W. H. Larew, for Appellant.

U. S. Webb, Attorney General, for Respondent.

CHIPMAN, P. J.—Plaintiff is the auditor of Madera county, and defendant is controller of the state. The action is to compel defendant to settle with plaintiff, by allowing the latter the several amounts claimed, aggregating $8,547.26. These several amounts making this aggregate are set out in seventeen separate counts, in an amended complaint, representing sums accruing at the semi-annual settlements from May, 1895, to the December settlement in 1903. It is alleged that these amounts were "part of the punitive penalties collected upon the redemption of real estate in Madera county during the six months immediately preceding their settlement; that no part of said penalties were required by law to be paid into the state treasury, that the whole thereof belongs to the county of Madera," and that said sums were "paid into the state treasury illegally and by error and mistake of the state controller in requiring" the same to be so paid. It is alleged that the mistake consisted in this: "that the state controller ever since the month of May, 1895, has

required, and still does require that all punitive penalties
lawfully collected upon the redemption of real estate sold to
the state for delinquent taxes shall be distributed between
the state and county in the same ratio that the state rate of
taxation bears to the county rate of taxation, whereas, in fact,
under the provisions of section 3816 of the Political Code, the
county of Madera was and is entitled to the whole of the
penalties so collected upon redemption of real estate sold to
the state for delinquent taxes, and the same should all have
been paid'' to the county. It is further alleged that said
mistake was not discovered by any officer of said county until
the month of June, 1903. A general demurrer was filed to
the amended complaint pleading also the statute of limita-
tions. The court overruled the demurrer, and, plaintiff de-
clining to further amend, judgment passed for defendant,
from which plaintiff appeals.

The case will be disposed of without considering the statute
of limitations. The sections cited infra are sections of the
Political Code, unless otherwise noted. The so-called ''pun-
itive penalties'' mentioned in the complaint are the penalties
imposed by section 3817, which must be paid by the person
desiring to redeem land sold to the state for delinquent taxes.
It is to section 3816 we must look to ascertain the disposition
which the statute makes of these penalties when collected.
And the question is: Are these so-called ''punitive penalties''
—or, more properly speaking, these graduated penalties on
redemption—to be divided between the state and county as
has been the practice under the controller's construction of
section 3816, since its amendment in 1895, or are all these
penalties to go to the county?

Before examining these two sections it will be well to notice
briefly the legislative provisions leading up to the point of
redemption from delinquent tax sales. Taxes are payable by
installments, the first in November, and the second in April,
and become delinquent respectively in these months. A
penalty of fifteen per cent is added to the taxes delinquent
in November, and must be collected for the use of the county,
and if these taxes be not paid when the second installment
becomes delinquent in the following April, the tax collector
''shall collect an addition of five per cent thereon.'' When
the last installment is delinquent in April, if unpaid, the
tax collector must collect for the use of the county ''an addi-

tion of five per cent thereon." (Section 3756.) (These penalties are, as now claimed by respondent, the "additional penalties on account of delinquency" mentioned in section 3816.) When the delinquent list is completed, the tax collector is required to publish the same, giving the amount of the "taxes, penalties and costs due" (section 3764), with notice that unless paid "the real property upon which such taxes are a lien will be sold" (section 3765). It will be observed that the word "penalties" in section 3765 is changed to read "percentage" by amendment in 1895 (Stats. 1895, p. 18, c. 11). Later along in the provisions relating to sale the word "penalties" is used. Section 3813 provides that where the property is sold to the state "it must be assessed each subsequent year for taxes, until a deed is made to the state therefor, in the same manner as if it had not been so purchased," but no further sale shall be made for nonpayment of taxes (section 3814). (These taxes are the "subsequent taxes" which with the "original taxes" are to be apportioned as provided in section 3816.) Semi-annual settlements of the county treasurer and auditor and the state controller are required by sections 3866 and 3868, and the question now here has arisen out of these settlements and relates to the penalties required to be paid on redemption under section 3817, and their distribution between the state and county under section 3816. A better arrangement of these two latter sections would have been to reverse the order of their occurrence, fixing the penalties first and directing their distribution afterward. But the arrangement cannot affect the construction to be given them. Section 3816 is as follows: "Whenever property sold to the state, pursuant to the provisions of this chapter, shall be redeemed as herein provided, the moneys received on account of such redemption shall be distributed as follows: The original and subsequent taxes, and percentages, penalty, and the interest paid on redemption, shall be apportioned between the state and county, or city and county, in the same proportion that the state rate bears to the county, or city and county rate of taxation" (it is under the foregoing clauses as now claimed by respondent that the graduated "penalties on redemption" are to be apportioned) ; "the additional penalties received on account of delinquency, together with the costs, shall be paid into the treasury for the use and benefit of the county, or city and county; the total

amount received for state poll tax shall be paid to the state, without deduction of any percentages; the amounts received for road or hospital poll tax, and the amounts received for school, or road district, or other taxes, together with the penalties thereon, shall be paid into the county treasury and placed to the credit of the proper funds." The section then requires an accurate account of these moneys to be kept by the auditor and treasurer and a settlement to be made with the controller semi-annually as provided in sections 3865, 3866, and 3868, "in such form as the controller may desire." Section 3817 provides that where redemption from sale to the state takes place, the redemptioner may redeem "by paying to the county treasurer the amount of the taxes, penalties and costs due thereon at the time of sale, with interest on the aggregate amount of said taxes, penalties and costs at the rate of seven per cent per annum; and all taxes that were a lien upon said real estate at the time said taxes became delinquent; and also all unpaid taxes of every description assessed against the property for each year since the sale; or, if not so assessed, then upon the value of the property as assessed in the year nearest the time to such redemption, with interest from the first of July, following each of said years, respectively, at the same rate, to the time of redemption." (To this point it is conceded that the county is entitled to the items mentioned as charges on "delinquency.") The section then reads: "And also all costs and expenses of such redemption, and penalties as follows, to wit: Ten per cent if redeemed within six months from the date of sale; twenty per cent, if redeemed within one year therefrom; forty per cent if redeemed within two years therefrom; sixty per cent if redeemed within three years therefrom; eighty per cent if redeemed within four years therefrom; one hundred per cent if redeemed within five or any greater number of years therefrom." (These "penalties" are now claimed by appellant to be included in the term "additional penalties," as used in section 3816, and should all go to the county, while respondent contends that they should be apportioned between the state and the county as penalties on redemption.) The section continues: "The penalty (or percentage as it is sometimes called) shall be computed upon the amount of each year's taxes in like manner, reckoning from the time when the lands would have been sold for the taxes of that year, if there had been

no previous sale thereof.'' The section then directs the auditor, in case a person desires to redeem, to make certificates in triplicate of the estimate of the amount to be paid, which shall be delivered to the county treasurer with the money, who shall give receipts in duplicate indorsed thereon. The redemptioner then is to deliver one of these to the auditor, and one to the state controller, and thus the deed ''to the state shall become null and void.''

The controversy (as has been indicated parenthetically in quoting the statute) relates to the graduated penalties, or punitive penalties, or percentages (whatever they may be called) of ten, twenty, forty, sixty, eighty, and one hundred per cent imposed on redemption. These graduated penalties were first imposed in 1895 and have been, without question, until this action was commenced, apportioned between the state and county, the same as original and subsequent taxes and interest paid on redemption. They were construed to mean penalties or percentage paid on redemption first mentioned in section 3816, and not as ''additional penalties received on account of delinquency,'' subsequently therein mentioned. The distinction between penalties for delinquency and penalties on redemption would seem to be a natural one to draw, and should be kept in mind. Prior to 1895, the state became the purchaser at delinquent tax sales only where there was no bidder for the land and redemption was limited to one year, after which a deed was given to the purchaser. The state now becomes the purchaser in all cases, and deed does not pass to the state for five years, although the land continues to be taxed for subsequent years, ''until a deed is made to the state therefor.'' (Section 3813.) Redemption may be made at any time, but if not redeemed the state may sell at public auction when the state gets its deed. The graduated redemption penalty was imposed in a way to encourage redemption, the penalty increasing with each year of non-redemption.

Prior to 1895, there were, as there still are, two classes of penalties, sometimes called percentages, a penalty for delinquency in paying the tax, and a penalty paid on redemption. The penalties for delinquency have always gone to the county, while the penalties on redemption have always been apportioned between the state and county. This distinction seems

to have been in the minds of the framers of the law of 1895. We do not see how these graduated penalties on redemption, imposed from year to year by increasing proportions, can be regarded as "additional penalties received on account of delinquency." The property is sold to the state upon the first year's delinquency, and is not again sold for taxes. The subsequent taxes are added from year to year until the state gets its deed, and they form a part of the "subsequent taxes" mentioned in section 3816 which are apportioned. The penalties required to be paid on redemption have nothing to do with the delinquency in the payment of the tax and bear no relation to it, for the land has passed to the state. They may well be embraced in one or other or both of the terms "percentages" and "penalty" mentioned in section 3816 to be apportioned as therein provided. The "additional penalties" referred to which are to be paid into the treasury for the use of the county, are expressly mentioned as being "received on account of delinquency," and how can we say that this must mean the graduated penalties which are imposed by section 3817, not on "account of any delinquency" but which are expressly stated to be exacted as "penalties on redemption"? We must, according to admitted canons of construction, give some meaning to all terms of the statute if we can do so without violating its obvious purpose. An interpretation which gives effect is preferred to one which makes void. (Civ. Code, sec. 3541.) The natural reading of section 3816 would lead to the meaning that all "percentages, penalties (penalty is the equivalent word used) and the interest paid on redemption," shall be apportioned as therein directed, as well as "the original and subsequent taxes," and this would clearly include the graduated penalties on redemption mentioned in section 3817. The percentages and penalty are "paid on redemption" as are the "original taxes." Upon similar rules of construction we must give some meaning to the terms "additional penalties received on account of delinquency" which go to the county. To do this we derive no aid from section 3817, for no mention is there made of penalties for delinquency except such as clearly refer to penalties before sale. We do, however, find in other sections a source of some light which is shed upon these terms, "additional penalties received on account of delinquency."

3 Cal. App.—23

Section 3817, by act of 1883 (Stats. 1883, p. 23, c. 16), mentions a penalty of twenty-five per cent on redemption, and it was apportioned under section 3816 to the state and county as is now done with the graduated penalties on redemption. Section 3816 then provided, as to what are now referred to as "additional penalties received on account of delinquency," as follows: "The five per cent additional . . . shall be paid to the county." This obviously referred to the five per cent penalty for delinquency under section 3756 as it then read and was so construed and so enforced. (See *Collier* v. *Shaffer*, 137 Cal. 319, at page 322, [70 Pac. 117].) But section 3756 was amended in 1891 (Stats. 1891, p. 447, c. 230) to correspond with the statute requiring semi-annual payment of taxes, and imposed three different penalties for delinquency, namely, fifteen, five and five per cent, already explained *supra*. When section 3816 was amended in 1895, there being several of these penalties, it very properly referred to them as "additional penalties [using the plural number] received on account of delinquency." When there was but a single "additional penalty" of five per cent for delinquency, the statute so referred to it and its meaning was not doubted. No more, do we think, should the present statute be held to be of doubtful meaning. It means the additional penalties on delinquency imposed by section 3756. They are imposed by the county before sale and become in fact part of the taxes and we do not see how the language can reasonably be held to include the graduated penalties on redemption, after sale, mentioned in section 3817.

There is an essential difference in the relation of the owner of the taxable land while it is resting under assessment for taxes, and after it has passed into other ownership by sale or failure to pay the taxes. In the first place he is a delinquent because he has failed to perform a duty. The term "delinquency" is apt and is expressive of the owner's attitude to the state. But when his land is taken by the state in lieu of the taxes which he failed to pay, it is then optional with him whether to take advantage of the privilege given him by law to redeem the land or let the state keep it. He is then a redemptioner, and he cannot devest the state of its interest in the land except he redeem within the period of the redemption, which continues until the state has disposed of the land

(section 3897).   He is not any longer a tax delinquent in any proper sense; he is not even a redemption delinquent, for there is no duty on him to redeem.   Indeed he is not any kind of a delinquent, for the term "delinquency" does not apply because of his neglect to redeem.   The supreme court said in *San Francisco etc. L. Co.* v. *Banbury,* 106 Cal. 129, [39 Pac. 439] : "If the state has become the purchaser of land at a delinquent tax sale, the tax has been extinguished by the sale, and the state, instead of being a creditor of the taxpayer, or entitled to receive any money due to it for taxes, has acquired an interest in the land, which is to be devested only by some affirmative action on the part of the delinquent taxpayer." This affirmative action is neither more nor less than redemption.   As throwing still further light upon the meaning of section 3816, it may be well to call attention to the fact that this section was twice amended at the same session of the legislature in 1895.   The first amendment was on February 25th (Stats. 1895, p. 21, c. 11).   There the language used was "the original and subsequent taxes, and all percentages and penalties paid in redemption," but made no mention of interest.   The language used further along to cover the penalties for delinquency was "the five per cent additional . . . " shall "be paid to the county."   This latter phrase failed to correctly refer to the amendment that had taken place in section 3756 wherein several additional penalties for delinquency had been imposed, as already pointed out.   To make clear the meaning, and to include interest and to amend in some other respects, section 3816 was again amended (or reenacted with amendments) on March 28, 1895.     (Stats. 1895, p. 333, c. 218.)   It there reads: "Additional penalties received on account of delinquency."   In the first amendment the words "on account of delinquency" did not appear, and the single penalty of five per cent failed to include all the penalties referred to in section 3756.   The change in phraseology seems to point to the construction we have given.   The change in the phraseology from "percentages and penalties paid on redemption" to "percentages, penalty and interest paid on redemption" was intended to include interest, omitted in the first amendment, and we have no doubt was also intended, and sufficiently expresses that intention, to mean the same thing as the phraseology first used in respect of the percentages or penalties on redemption.

Pursuing the changes in the statute some further, some additional light is thrown upon the question. In 1891, when the change was made in section 3756 to meet the semi-annual payments of taxes, already noted (Stats. 1891, p. 447, c. 230), section 3816 was also amended (Stats. 1891, p. 449, c. 230), and the latter section directed "the original tax and the twenty-five per cent and interest paid in redemption" to be "apportioned between the state and county and city and county in the same proportion that the state tax bears to the county and city and county tax." And the section then provides that: "The moneys received from delinquents shall be paid to the county, or city and county." Undoubtedly these "moneys received for delinquencies" which were to go to the county, under section 3756, as amended, referred to the penalties or moneys received at the same time. The statute as then understood and enforced, recognized the clear distinction between penalties on redemption and penalties for delinquency. This distinction occurs so frequently in the code sections as to leave no doubt in our minds that it was intended to be observed in the enforcement of the law. It is still further seen in section 3758 where the auditor is directed to "enter against all the items of taxes due and unpaid the penalty for delinquency," clearly referring to section 3756. Also section 3770, where the tax collector is directed to collect "in addition to the taxes due on the delinquent list, together with the penalties for delinquency." Everywhere in the code the per cent referred to in section 3756 is spoken of as "penalties for delinquency," and no reason is perceivable why the words "additional penalties received on account of delinquency" should be given any different construction when used in section 3816. A careful examination of the statutes establishing the system or policy of taxation of lands, their sale for delinquent taxes, the conditions on which redemption may be made and the steps to be taken on redemption shows a consistent and uniform purpose of the law to be, and the practice under it has been, for a long period of years, to apportion the moneys collected as percentages or penalties on redemption between the state and county "in the same proportion as the state tax bears to the county and city and county tax," and likewise the moneys received for original and subsequent taxes, and the interest on such moneys have been so appor-

tioned. Some question has arisen between the parties as to the effect on the question here by reason of the decisions in *Collier* v. *Shaffer*, 137 Cal. 319, [70 Pac. 177], and *San Diego Investment Co.* v. *Shaffer*, 137 Cal. 323, [70 Pac. 179]. These cases concerned taxes imposed under the law prior to 1891 and do not, so far as we can see, aid us materially in the solution of the question now here.

We have not singled out for comment the points made in argument by counsel for appellant in the careful and able presentation they have given the case. But we have endeavored to treat the question before us in a way to cover all material points and to leave no doubt as to our construction of the statute. The conclusion we have reached seems to us to result not only from a reasonable construction of the statute, but to be fair and just to the state and counties concerned. After sale the burden has shifted to the state and the redemptioner's relations are then with the state and the penalties in question begin to be imposed when this relation begins. In the apportionment of these charges on redemption the state receives much the smaller part, the counties receiving the balance. In the long run, should the counties get all these moneys, the benefit to them would be but temporary, for this loss of revenue to the state would have to be made up ultimately by taxation. While these considerations should not control in reaching a decision, they coincide with what is the ultimate aim of judicial determinations—to do substantial justice between litigants.

The judgment is affirmed.

Buckles, J., and McLaughlin, J., concurred.