[Civ. No. 66424. Second Dist., Div. Four. Feb. 16, 1983.]

CITY OF LOS ANGELES et al., Plaintiffs and Respondents, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

**1000**

**COUNSEL**

John H. Larson, County Counsel, and Lawrence B. Launer, Deputy County Counsel, for Defendants and Appellants.

Ira Reiner, City Attorney, Thomas C. Bonaventura and Richard A. Dawson, Assistant City Attorneys, for Plaintiffs and Respondents.

## OPINION

## McCLOSKY, Acting P. J.—

### NATURE OF THE CASE

The County of Los Angeles, Board of Supervisors of the County of Los Angeles, Harry L. Hufford, Mark Bloodgood and Alexander Pope (collectively referred to as County) appeal from the judgment entered on January 5, 1982, in favor of the City of Los Angeles (City),[1] ordering that a peremptory writ of mandate issue commanding the County "to transmit to the City of Los Angeles all unremitted delinquent penalties and interest collected by the County of Los Angeles on the City of Los Angeles' share of the one-percent property tax revenue for the fiscal years 1978-79, 1979-80 and 1980-81."

### ISSUE

■ Is the City entitled to receive a share of the current year delinquent penalties on property taxes assessed and collected after the adoption of article XIII A, section 1, subdivision (a) of the California Constitution?

### DISCUSSION

In June 1978, the voters of this state approved Proposition 13 which added article XIII A to the California Constitution.[2] Article XIII A "change[d] the previous system of real property taxation and tax procedure by imposing important limitations upon the assessment and taxing powers of state and local governments." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 218 [149 Cal.Rptr. 239, 583 P.2d 1281].)

Section 1, subdivision (a) of article XIII A provides: "The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property. *The one percent (1%) tax to be collected by the counties and apportioned according to law to districts within the counties.*" (Italics added.)

---

[1] The clerk's transcript contains two notices of appeal. There is, however, only one appeal from one judgment.

On January 4, 1982, the judgment prepared by the City was filed with the trial court. It was not entered, however, until January 5, 1982.

The County filed its first notice of appeal on January 4, 1982, before the judgment was entered. Apparently, when the County determined that it had prematurely filed its notice of appeal, it filed a second notice of appeal from the judgment entered on January 5, 1982.

[2] Article XIII A took effect on July 1, 1978, except for section 3 which became effective when article XIII A was passed. (See art. XIII A, § 5.)

Implementing legislation, enacted after the passage of Proposition 13, defined the term "district," as used in article XIII A, section 1, to mean "a local agency, which includes a *city*, county, city and county, special district, school district, county superintendent of schools, or community college district which levied, or had levied on its behalf, a property tax during the 1977-1978 fiscal year." (Rev. & Tax. Code, § 2217, added by Stats. 1978, ch. 292, § 30, p. 609, and repealed by Stats. 1981, ch. 242, p. 1251.)[3] (Italics added.)

Revenue and Taxation Code section 2237 (Stats. 1978, ch. 332, § 27, p. 702) mandated that counties levy the ad valorem property tax on taxable assessed value and distribute the revenues in accordance with Government Code section 26912 which contained the apportionment formula for the 1978-1979 fiscal year. (See Gov. Code, § 26912, subd. (b).)

The apportionment formulae for fiscal years 1979-1980 and 1980-1981 are set forth in Revenue and Taxation Code sections 96 and 97, respectively.

In 1980, Revenue and Taxation Code section 2237 was repealed (Stats. 1980, ch. 1256, § 11.3, p. 4252) and replaced by Revenue and Taxation Code section 93, which section is essentially the same as the section it replaced except that it provides that property tax revenues are to be distributed in accordance with the Government Code rather than in accordance with Government Code section 26912. (See Rev. & Tax. Code, § 93, subd. (b).)

"Property tax revenue" is defined in Revenue and Taxation Code section 95, subdivision (c) to include "the amount of state reimbursement for the homeowners' and business inventory exemptions."[4]

To date, the Legislature has not specifically provided that "property tax revenues" include delinquent penalties. Nor has the Legislature separately provided for the apportionment and distribution of delinquent penalties.

Taking advantage of this omission, the County, beginning with the 1979-1980 fiscal year stopped distributing current year delinquent penalties to the Ci-

---

[3]The term "district," as used in article XIII A, section 1, is now defined in Revenue and Taxation Code section 95.5 to mean "a jurisdiction as defined in subdivision (b) of Section 95."

Revenue and Taxation Code section 95, subdivision (b) in pertinent part provides: " 'Jurisdiction' means a local agency, school district, community college district, or county superintendent of schools." The term "local agency" is defined in Revenue and Taxation Code section 95, subdivision (a) to mean "a *city*, county, and special distict." (Italics added.)

[4]This term was similarly defined in Government Code section 26912 which sets forth the allocation formula for the 1978-1979 fiscal year. (Gov. Code, § 26912, subd. (b)(5).)

ty and other "districts," who prior to the passage of Proposition 13 had the authority to levy their own property taxes.[5]

The County contends that because the Legislature did not specifically provide that current year delinquent penalties are part of the property tax revenue to be apportioned and distributed to the "districts," such delinquent penalties should be retained by the County since it claims that the County historically had the right to retain those monies. It maintains that "[w]ith the exception of charter cities, the County had the right to retain delinquent penalties which were paid on the taxes levied by *anyone.*" In support of this position, County cites Revenue and Taxation Code section 4653.6 (enacted in 1951) which provides that "[a]mounts paid as delinquent penalties shall be distributed to the county general fund."

That contention is meritless. Revenue and Taxation Code section 2237, and later section 93, subdivision (b) each provides that property tax revenues are, since the advent of Proposition 13, to be distributed in accordance with the provisions of the Government Code, not the Revenue and Taxation Code.

To rule in favor of the County in this matter would require us to "judicially legislate" to fill in a gap in the implementing legislation under article XIII A, section 1, subdivision (a) as to the entitlement of cities to penalties on the portion of delinquent taxes collected on their behalf. Legislation being the business of the Legislature, not the courts, we may not do so, and we accordingly look elsewhere for guidance.

" ' "It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in light of such decisions as have a direct bearing upon them. [Citations.]" [Citations.]' " (See *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977-978, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394], citing *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].)

In *Long Beach City School Dist.* v. *Payne* (1933) 219 Cal. 598, 601 [28 P.2d 663], the Supreme Court set forth the general rule with regard to the distribution of delinquent penalties thusly: "*The general rule is that the penalties follow the tax.* This rule is stated with supporting authorities in 61 C.J., at pages 1528

---

[5]At the hearing on the petition for the peremptory writ of mandate the County conceded that it continues to pay the City redemption penalties and penalties and interest on prior year taxes levied after the passage of Proposition 13.

A current year delinquency exists if property taxes are paid after they become delinquent but before the start of the new fiscal year. If delinquent taxes are not paid before the new fiscal year begins, a prior year delinquency exists.

and 1529, as follows: 'Unless otherwise directed, interest, penalties, and costs collected on delinquent taxes follow the tax, and go to the state, county, or city according as the one or the other is entitled to the tax itself; and, in cases where two or more of them are interested in the tax, such interest and penalties should be apportioned among them in the ratio of their respective shares of the tax, the foregoing being sometimes provided for by statute. But the *legislature* may change this rule and dispose otherwise of interest or penalties.'" (Italics added.)

We therefore must assume that the Legislature had in mind the existing law including existing judicial decisions on the same general subject when it enacted the implementing legislation. (See *Bailey* v. *Superior Court, supra,* 19 Cal.3d at pp. 977-978, fn. 10.) We accordingly conclude that, in the absence of legislative directive providing otherwise, the delinquent penalties in dispute herein follow the tax.

The City is accordingly entitled to a proportionate share of delinquent penalties for fiscal years 1978-1979, 1979-1980 and 1980-1981, by virtue of its right to share in the property tax revenues levied and collected by the County.[6]

The judgment is affirmed.

Amerian, J., and Wisot, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 13, 1983.

---

[6]Article XIII A, section 1, subdivision (a), while eliminating the City's authority to levy its own ad valorem property tax (except to pay the interest and redemption charges on any indebtedness approved by the voters prior to July 1, 1978 (art. XIII A, § 1, subd. (b)), gave the City the right to share in the property tax revenues collected by the County.

*Assigned by the Chairperson of the Judicial Council.