OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  |  |
|---|---|
| OPINION | : |
| | :       No. 89-202 |
| of | : |
| | :       <u>OCTOBER 18, 1989</u> |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| RONALD M. WEISKOPF | : |
| Deputy Attorney General | : |
| | : |

---

THE HONORABLE THOMAS F. CASEY, III, COUNTY COUNSEL, COUNTY OF SAN MATEO, has requested an opinion on the following question:

Does the amount of local property tax revenues that is deducted from the "revenue limit" of school districts in determining the apportionment of state aid under section 42238 of the Education Code include penalties or interest on delinquent taxes for prior years?

CONCLUSION

Since the law provides that certain delinquent penalties and interest paid on delinquent property taxes are to be paid to the county general fund and not be distributed to school districts and other taxing agencies as are most taxes, penalties and interest, the penalties and interest on delinquent property taxes for prior years which school districts receive (but not those not received by the school districts) are deducted from the "revenue limit" in determining the apportionment of state aid under section 42238 of the Education Code.

ANALYSIS

Section 42238 of the Education Code sets forth a complex formula that is used to determine the amount of state revenues that will be provided school districts each year.[1] For each fiscal year every county superintendent of schools first determines "a revenue limit" for each school district in the county pursuant to subdivisions (a) though (f) of the section. Thereafter, the State Superintendent of Public Instruction apportions to each school district the amount so determined, less certain sums specified in subdivision (h) of the section. (*Id*., subd. (h).)

Two of the specified categories by which the state's allocation of funds to a district is reduced are the current year's property tax revenues received by the district (subd. (h)(1)), and "prior years taxes and taxes on the unsecured roll" (subd. (h)(4)). We are asked whether penalties

---

[1]Section 42238 is set forth as an Appendix to this Opinion.

and interest on prior years delinquent taxes are amounts to be included in calculating that reduction. We conclude the penalties and interest on prior years' delinquent taxes that a school district receives should properly be factored into that equation. This would include (i) delinquency penalties, redemption penalties and interest that is paid to redeem tax-defaulted property on the secured roll, and (ii) the additional 1½% per month which must be paid to redeem property on the unsecured roll after taxes on it are two months delinquent. Similar amounts appropriately paid as penalties and interest on prior years taxes for property on the supplemental roll would also be factored into the reduction. However, since a school district does not receive amounts paid as delinquent penalties or accrued interest paid on judgments for the recovery of unpaid prior years taxes on property on the unsecured roll and non-lien supported property on the supplemental roll, those amounts would not be included in the deduction.

Our primary task in answering the question is to ascertain the intent of the Legislature: Did the Legislature intend for penalties and interest that are paid in connection with prior years' tax delinquencies to be included in the revenue reduction that is made under subdivision (h) of section 42238? (Cf., *Select Base Materials* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645.) To ascertain that intent we turn first to the words of the statute itself. (*Moyer* v. *Workmen's Compensation Appeals Board* (1973) 10 Cal.3d 222, 230; *Rich* v. *State Board of Optometry* (1965) 235, Cal.App.2d 591, 604.) Subdivision (h) of section 42238 provides as follows:

"(h) The Superintendent of Public Instruction shall apportion to each school district the amount determined in this section less the sum of:

"(1) The district's property tax revenue received pursuant to Chapter 3 (commencing with Section 75) and Chapter 6 (commencing with Section 95) of Part 0.5 of the Revenue and Taxation Code. [This would be the property tax revenue specially received from property taxes on the supplemental roll, and a district's general share of property tax revenues.]

"(2) The amount, if any, received pursuant to Part 18.5 (commencing with Section 38101) of the Revenue and Taxation Code. [This would be the amount of tax revenue received by a district under the Timber Yield Tax Law (Cf., Rev. & Tax. Code, § 38905.1).]

"(3) The amount, if any, received pursuant to Chapter 3 (commencing with Section 16140) of the Government Code. [This would be the amount of revenue received by a district from the state subvention to compensate for reduced property taxes on open space "Williamson Act" lands (cf., Rev. & Tax. Code, § 16148 et seq.).]

"(4) Prior years taxes and taxes on the unsecured roll.

"(5) Fifty percent of the amount received pursuant to Section 41603. [This would be fifty percent of the amount received by a district of state equalization aid revenue.]

"(6) The amount of motor vehicle license fees distributed pursuant to Section 11003.4 of the Revenue and Taxation Code. [Under the cited section, school districts receive an appropriate share of trailer coach license fees for trailer coaches situated in them.]" (Emphases added.)

Subdivision (h) thus sets forth certain categories of revenue that school districts receive, the sum which is to be deducted from their "revenue limit" in calculating the amount of state aid to them. In this subdivision, not all sources of revenue that a district might receive under various statutory schemes have been included, for the Legislature has been careful to particularize the types of revenues which are to be included.

With respect to the categories of monies listed in subdivision (h), except for the one mentioned in subdivision (h)(4), the Legislature has indicated that the amounts to be deducted are those which are received by or distributed to a district. In the overall formula of the subdivision we can assume that would be the same for subdivision (h)(4) as well. (Cf., *Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 788; *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844; *Moyer* v. *Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d 222, 230.) Indeed the legislative history of the subdivision indicates that would be so.[2] Thus we perceive it central to the legislative scheme of subdivision (h) that only monies of the enumerated categories which are received by a school district are to be deducted under subdivision (h) to reduce its "revenue limit". If the distribution of certain monies is directed elsewhere and does not reach a school district, such amounts would not be included in the subdivision (h) deduction.

The particular monies we are asked about are the penalties and interest that are paid in connection with delinquent taxes for prior years. Subdivision (h) of section 42238 does not itself give an indication of whether penalties and interest should be included in the reduction the Superintendent of Public Instruction is to make from a school district's "revenue limit" in apportioning its amount of state aid. The subdivision neither defines the term "property tax revenue received [by the district]" found in clause (h)(1), nor the term "prior years taxes and taxes on the unsecured roll" found in clause (h)(4). Nor does a study of the chapters of the Revenue and Taxation Code which are referred to in clause (h)(1) show language addressing the specific issue of whether penalties and interest on prior years taxes are to be included in calculating the reduction. In fact, the sections of the Code which define taxes vis-à-vis the secured roll and the unsecured roll (§§ 4653 and 4655/4658, respectively) make no mention of penalties or interest.

However, it is a general rule that interest and penalties usually "follow the tax." (*Long Beach City School District* v. *Payne*, *supra*, 219 Cal. 598, 601; *Community Redevelopment Agency* v. *Bloodgood* (1986) 182 Cal.App.3d 342, 346; *City of Los Angeles* v. *County of Los Angeles* (1983) 139 Cal.App.3d 999, 1003-1004; cf., 27 Ops.Cal.Atty.Gen. 352, 356 (1956).)[3] Thus,

_____

[2]Section 42338 of the Education Code was amended to substantially its present form in 1983 when the language presently found in subdivision (h)(4) for a reduction for "prior years taxes and taxes on the secured roll" first appeared, then as subdivision (j)(4). (Stats. 1983, ch. 498, § 20.4, p. 3121.) "It is reasonable to presume that the Legislature amended [the] section[] with the intent and meaning expressed in the Legislative Counsel's Digest. (See *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713." (*People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428, 434.) The Legislative Counsel's Digest for the Bill (SB 813) which amended the section indicates that under the section, reduction is made from school districts revenue limits for "property tax revenues received." (Legis.Counsel's Dig., Stats. 1983, p. 3084.)

[3]In certain situations courts have viewed penalties and interest as part of the tax itself. (See e.g., *Union Pacific R.R.*

"`[u]nless otherwise directed [by the Legislature], interest, penalties, and costs collected on delinquent taxes follow the tax, and go to the state, county, or city according as the one or the other is entitled to the tax itself.'" (*Long Beach City School Dist.* v. *Payne*, *supra*, 219 Cal. at 601 quoting 61 Cal.Jur. 1528-1529.)

A school district would be "in the same category as the state, county or city named in the foregoing statement of the general rule." (*Long Beach City School Dist.* v. *Payne*, *supra*.) Thus, it would be entitled to be credited with the penalties and interest collected on delinquent taxes, as it would the taxes themselves, unless the Legislature has provided otherwise. (*Id.* at 601-602.) In line with our perception of the Legislature's plan of subdivision (h) then, we look to the applicable statutes which direct the distribution of penalties and interest collected on prior years taxes to see if they are to go to the state's school districts or elsewhere. (*Community Redevelopment Agency* v. *Bloodgood*, *supra*, 182 Cal.App.3d 342, 345-346; 27 Ops.Cal.Atty.Gen. 352, 356, *supra*.) If an amount is directed to the districts, then appropriate reduction should be made from their "revenue limit" under subdivision (h). We therefore turn to the Revenue and Taxation Code which sets penalties and interest on delinquent taxes and provides for their distribution.[4]

In California all property is subject to taxation unless exempted by California or federal law. (Cal. Const., art. XIII, § 1, subd. (a); Rev. & Tax. Code, § 201; *English* v. *County of Alameda* (1977) 70 Cal.App.3d 226, 234.) Each county assessor prepares an "assessment roll" which lists all property within the county which is his or her duty to assess. (§ 601.) This includes property on what is known as the "secured roll" and property on what is known as the "unsecured roll." (§ 109; cf., 1 Ops.Cal.Atty.Gen. 213 (1943).) The "secured roll" is that part of the entire assessment roll which lists, inter alia, property the taxes on which are a lien on real property that is sufficient in the opinion of the assessor to secure payment of the taxes. (§ 109.) The remainder of the assessment roll is called the "unsecured roll", i.e., it includes all taxable property that is not required to be shown on the secured roll. (*Ibid.*) In other words, unsecured roll property is, inter alia, "property the taxes on which are not a lien on real property sufficient, in the opinion of the assessor, to secure payment of the taxes." (§ 134, subd. (a).) County assessors also prepare what is called a "supplemental roll" which lists real property which has changed ownership or has had new construction completed in the fiscal year. (§ 75.7, cf., § 75.5.) This separate listing is necessary to more efficiently reflect those changes, for upon them reassessment of property occurs. (§ 75, cf., § 75.10, et seq.)

If taxes on property on all three rolls are not paid on time they become delinquent and a delinquency penalty attaches. If the delinquency persists beyond a specified time, additional penalties and interest amounts become owing. In brief, there are basically three types of penalties and two types of interest an individual might have to pay if his or her taxes are not paid on time:

*Co.* v. *State Bd. of Equalization* (1989) 49 Cal.3d 138, 156 fn. 16; *County of Los Angeles* v. *Morrison* (1940) 15 Cal.2d 368, 373; *People* v. *Pacific Employers Ins. Co.* (1973) 36 Cal.App.3d 296, 300; *Carpenter* v. *Peoples Mut. Life Ins. Co.* (1937) 10 Cal.2d 303-304; *Sonleitner* v. *Superior Court* (1958) 158 Cal.App.2d 258, 263; *Camden Fire Ins. Assn.* v. *Johnson* (1941) 42 Cal.App.2d 528, 530; but see, *Weston Inv. Co.* v. *State of California* (1948) 31 Cal.2d 390, 393-394 [otherwise with respect to redemption penalties which do not "attach" to the tax].)

[4]Unless context indicates otherwise, unidentified section references will be to the Revenue and Taxation Code.

-- there is an initial "delinquent penalty" of ten percent of the tax due which attaches if secured roll taxes are not paid before their delinquency date (§§ 2617, 2618) if taxes on the unsecured roll are not paid before their delinquency date (§ 2922, subds. (a)(b)), or if taxes on supplemental roll property are not paid before their delinquency date (§ 75.52, subd. (c));

-- there is a "redemption penalty" of one and one half percent per month on the amount of defaulted taxes a person must pay in order to redeem his or her secured roll property once it has become tax-defaulted, i.e., subject to sale by the state if it is not "redeemed" by the taxpayer within five years (§§ 3352, 3361, 3362, 3372(b), 4102, 4103; cf., § 75.53 [lien-supported supplemental roll property)[5]; and

-- there is an "additional penalty" of one and one half percent per month that a person must pay to redeem unsecured roll property after taxes on it have been delinquent for two months (§§ 2922, 2959).

Of the two categories of interest,

-- there is interest in the amount of one and one half percent a month on the unpaid balance of the redemption amount that a redemptioner must pay when electing to redeem tax defaulted secured roll property in installments (§ 4221, subd. (d)); and

-- there is accrued legal interest which might have to be paid on judgments for the recovery of unpaid unsecured roll property taxes in the special situation in which such suits are authorized to collect them (§§ 4655.4, 4655.8; cf., § 3002 et seq.).

When such amounts are paid along with prior years' delinquent taxes are they to be factored into the reduction that is made under subdivision (h) of section 42238 of the Education

_____

[5]The Revenue and Taxation Code was amended in 1984 to remove the concept of selling and deeding tax-delinquent property to the state. (Stats., 1984, ch. 988.) For example, prior thereto, the Code referred to "tax-sold" property which was defined as "real property which has been sold to the State by operation of law for taxes and from which the lien of the taxes for which it was sold has not been removed." (Former § 126.) It was not really a "sale" for the state only acquired an equitable title subject to defeasance should the taxpayer-owner exercise his right to redeem. (*Weber* v. *Wells*, *supra*, 154 F.2d 1004, 1005.) But five years thereafter, "tax-sold property" would be deeded to the state, would become known as "tax-deeded property" (former § 127) and the right of redemption would terminate on its subsequent sale by the state. (Former §§ 3361, 3362, 3511.) Now the former references to "tax-sold" and "tax-deeded" property have for the most part been replaced with the term "tax-defaulted property" (see e.g, §§ 126, 3351 et seq.) which more accurately reflects the status of the property at the time of the initial tax default. (Cf., § 3362; see generally, 51 Cal.Jur.3d, Property Taxes, §§ 155-177.) It is noted that section 75.54, subdivision (b), still speaks of a "sale to the state" with respect to unpaid taxes which are not a lien on real property that have become delinquent on the supplemental roll.

Code?  Again, in line with our perception of the Legislature's plan of subdivision (h) we look to the statutes which direct the distribution of penalties and interest on prior years' delinquent taxes to see if any is to go to a school district's fund.

As to the secured roll, the Legislature has provided --

(1) for the basic <u>taxes</u> to "be distributed to each fund on the basis of the tax rate established for the current secured roll on which they are charged and in the same proportion that the tax rate for each fund bears to the total tax rate applicable." (§ 4653.4.)

(2) for the <u>amounts paid as delinquent penalties</u> to "be distributed to the county general fund." (§ 4653.6.)

and

(3) on redemptions, for the <u>taxes, and all delinquent penalties, interest and redemption penalties accruing thereon</u>, to "be distributed to each fund on the basis of the tax rate established for the fiscal year preceding that in which distribution is made and in the same proportion as the tax rate for each fund bears to the total tax rate applicable." (§ 4656.2.)

As to the unsecured roll, the Legislature has provided --

(1) for the basic <u>taxes</u> to "be distributed to each fund on the basis of the tax rate established for the current unsecured roll and in the same proportion that the tax rate for each fund bears to the total tax rate applicable." (§ 4655.2 [current roll]; cf., § 4658.2 [delinquent roll].)

and

(2) for the <u>amounts paid as delinquent penalties or accrued legal interest paid on judgments for the recovery of unpaid property taxes rendered by the courts of this state</u> to "be distributed to the county general fund." (§ 4655.4 [current roll]; cf., § 4658.4 [delinquent roll].)

Penalties, costs and other charges resulting from delinquency of supplemental roll taxes follow the same distributions. (§ 75.72.)

With respect to penalties and interest collected on prior years delinquent taxes we thus see that the Legislature has directed that an appropriate proportion of delinquent penalties, interest and redemption penalties that are paid to redeem secured roll property go to a school district's fund (§ 4656.2; cf., §§ 75.53; 75.72 [lien-supported supplemental roll property], but that amounts paid as delinquent penalties or accrued legal interest on both current and delinquent unsecured roll property to go to the county general fund (§§ 4655.4, 4658.4; cf., § 75.54, 75.72 [non-lien supported property on the supplemental roll]).  The former amounts would be deducted under subdivision (h) as the school districts would receive them.  But the just-summarized pattern of distribution indicates a Legislative direction that the latter penalties and interest not follow their tax to school districts (per §§ 4655.2, 4658.2), but rather go to the county general fund. (§§ 4655.4, 4658.4.)  Since school districts would not receive those amounts, they would not be deducted under subdivision (h).

The Legislature has not specifically directed the distribution of the "additional penalty" of 1½% per month which must be paid to redeem property on the unsecured roll after taxes on it have been two months delinquent (cf., §§ 2922(d), 2959). The delinquency can persist beyond a fiscal year, and if the penalty is paid in a subsequent fiscal year, should it proportionately go to the school districts funds along with the basic tax, or would it be considered a "delinquent penalty" which the Legislature has directed to go to the county general fund (§§ 4655.4, 4658.4)?

Under the "penalty follows the tax" rule, unless the Legislature has directed otherwise, the amount should follow its tax to the school district fund. The Legislature has provided, however, both for the current and the delinquent unsecured rolls, that "amounts paid as <u>delinquent penalties</u> or accrued legal interest ... be distributed to the county general fund." (§§ 4655.4, 4658.4.) If the 1½% amount, which is called an "additional penalty" (§ 2922, subd. (b)) is to be considered a "delinquent penalty" within that directive, the amount would not be received by a school district and thus would not be factored in the equation of subdivision (h).

The payment of the "additional penalty" after unsecured roll property taxes have been two-months delinquent is graduated and heavier than the initial "delinquent penalty" of 10% which attached when the taxes were first not paid. As such it is more akin to the similar redemption penalty on secured roll property (which goes proportionately to a school district's fund), rather than a penalty for an initial delinquency. Our Supreme Court has carefully distinguished between the two. (*Long Beach City School Dist.* v. *Payne, supra*, 219 Cal.598, 603; *Honeycutt* v. *Colgan, supra*, 3 Cal. App. 348, 354.) Indeed in *Payne* the Court observed that our Office had done likewise since 1916. (*Long Beach City School Dist.* v. *Payne, supra* at 605.) Thus,

"It is therefore important to keep in mind the distinction for purposes of distribution between the percentages which accumulate under section [4653.6] on account of delinquency prior to [property being tax-defaulted and subject to redemption] and the penalties for redemption as provided in section [4656.2]. . . . When the legislature . . . directed that `penalties' . . . should be distributed to the appropriate fund, it must be held that the word `penalties' was used in the sense of penalties for redemption . . . and not as percentages for delinquency dealt with either before or after [property becomes tax-defaulted] . . . . This conclusion is the same as that arrived at in the opinions of the attorney-general in 1916 and 1917, transmitted to the county and state officials, as to the distribution of percentages for delinquency and redemption moneys under . . . the Political Code." (*Long Beach City School Dist.* v. *Payne, supra*, 219 Cal. at 605.)

The legislature has provided that "delinquent penalties" on unsecured roll property go to the county general fund. (§§ 4655.4, 4658.4.) However, the amount in question is denominated as "an additional penalty", which distinguishes it from a "delinquent penalty". (§ 2922, subd. (b).) Its name aside, we do not believe that the penalty is in the nature of a "delinquent penalty". Rather, in keeping with the parallelism of the distribution of tax revenues that the Legislature has created, we believe it is like the "redemption penalty" for secured roll property, which goes proportionally to a school district's fund. Furthermore, since the Legislature here has been silent as to where this penalty should be directed, under the general rule it would follow its tax to the school district fund. Accordingly we conclude that the "additional penalty" on prior years' tax delinquent unsecured roll property should be included in the reduction that is made under section 42238, subdivision (h).

In conclusion then, an appropriate reduction from a school district's "revenue limit" should take place under section 42238, subdivision (h) for those penalties and interest the district receives in connection with the payment of prior years' delinquent taxes. This will include (a)

delinquency penalties, redemption penalties and interest following the redeeming of property on the secured roll; (b) the additional penalty of 1½% per month amount which must be paid to redeem property on the unsecured roll after taxes on it have been delinquent for two months; and (c) similar amounts paid in connection with prior years' delinquencies on supplemental roll property.

*****

APPENDIX

Section 42238 of the Education Code provides as follows:

"(a) For the 1984-85 fiscal year and each fiscal year thereafter, the county superintendent of school shall determine a revenue limit for each school district in the county pursuant to this section.

"(b) The base revenue limit for the current fiscal year shall be determined by adding to the base revenue limit for the prior fiscal year the following amounts:

"(1) The inflation adjustment specified in Section 42238.1.

"(2) For the 1985-86 and 1986-87 fiscal years only, the equalization adjustment specified in Section 42238.4.

"(3) For the 1985-86 fiscal year, the amount received per unit of average daily attendance in the 1984-85 fiscal year pursuant to Section 42238.7.  [Since repealed.]

"(4) For the 1985-86, 1986-87, and 1987-88 fiscal years, the amount per unit of average daily attendance received in the prior fiscal year pursuant to Section 42238.8.

"(c) Except for districts subject to subdivision (d), the base revenue limit computed pursuant to subdivision (b) shall be multiplied by the district average daily attendance computed pursuant to Section 42238.5.

"(d) For districts for which the number of units of average daily attendance determined pursuant to Section 42238.5 is greater for the current fiscal year than for the 1982-83 fiscal year, compute the following amount, in lieu of the amount computed pursuant to subdivision (c):

"(1) Multiply the base revenue limit computed pursuant to subdivision (c) by the average daily attendance computed pursuant to Section 42238.5 for the 1982-83 fiscal year.

"(2) Multiply the lesser of the amount in subdivision (c) or 1.05 times the statewide average base revenue limit per unit of average daily attendance for districts of similar type for the current fiscal year by the difference between the average daily attendance computed pursuant to Section 42238.5 for the current and 1982-83 fiscal years.

"(3) Add the amounts in paragraphs (1) and (2).

"(e) The base revenue limit per unit of average daily attendance shall be the lesser of the following amounts:

"(1) The amount determined in subdivision (b).

"(2) The amount computed pursuant to Section 42238 for the prior fiscal year divided by the prior fiscal year revenue limit average daily attendance times the sum of 1.0 and twice the percentage increase in revenue limits computed pursuant to Section 42238.1 for the current fiscal year.

"(f) For districts electing to compute units of average daily attendance pursuant to paragraph (3) of subdivision (a) of Section 42238.5, the amount computed pursuant to Article 4 (commencing with Section 42280) shall be added to the amount computed in subdivision (c) or (d) as appropriate.

"(g) For the 1984-85 fiscal year only, the county superintendent shall reduce the total revenue limit computed in this section by the amount of the decreased employer contributions to the Public Employees' Retirement System resulting from enactment of Chapter 330 of the Statutes of 1982, offset by any increase in those contributions, as of the 1983-84 fiscal year, resulting from subsequent changes in employer contribution rates.

"The reduction shall be calculated as follows:

"(1) Determine the amount of employer contributions that would have been made in the 1983-84 fiscal year if the applicable Public Employees' Retirement System employer contribution rate in effect immediately prior to the enactment of Chapter 330 of the Statutes of 1982 were in effect during the 1983-84 fiscal year.

"(2) Subtract from the amount determined in paragraph (1) the greater of subparagraph (A) or (B):

"(A) The amount of employer contributions that would have been made in the 1983-84 fiscal year if the applicable Public Employees' Retirement System employer contribution rate in effect immediately after the enactment of Chapter 330 of the Statutes of 1982 were in effect during the 1983-84 fiscal year.

"(B) The actual amount of employer contributions made to the Public Employee's Retirement System in the 1983-84 fiscal year.

"(3) For purposes of this subdivision, employer contributions to the Public Employees' Retirement System for any of the following shall be excluded from the calculation specified above:

"(A) Positions supported totally by federal funds that were subject to supplanting restrictions.

"(B) Positions supported by funds received pursuant to Section 42243.6.

"(C) Positions supported, to the extend of employer contributions not exceeding twenty-five thousand dollars ($25,000) by any single educational agency, from a revenue source determined on the basis of equity to be properly excludable from the provisions of this subdivision by the Superintendent of Public Instruction with the approval of the Director of Finance.

"(4) For accounting purposes, the reduction made by this subdivision may be reflected as an expenditure from appropriate sources of revenue as directed by the Superintendent of Public Instruction.

"(h) The Superintendent of Public Instruction shall apportion to each school district the amount determined in this section less the sum of:

"(1) The district's property tax revenue received pursuant to Chapter 3 (commencing with Section 75) and Chapter 6 (commencing with Section 95) of Part 0.5 of the Revenue and Taxation Code.

"(2) The amount, if any, received pursuant to Part 18.5 (commencing with Section 38101) of the Revenue and Taxation Code.

"(3) The amount, if any, received pursuant to Chapter 3 (commencing with Section 16140) of the Government Code.

"(4) Prior years taxes and taxes on the unsecured roll.

"(5) Fifty percent of the amount received pursuant to Section 41603.

"(6) The amount of motor vehicle license fees distributed pursuant to Section 11003.4 of the Revenue and Taxation Code.

"(i) This section shall become operative July 1, 1984."